IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRYAN E. SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-01037-CV-W-ODS |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION (1) DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending are Defendant United States Department of Justice's Motion for
Summary Judgment (Doc. #18), and Plaintiff Bryan Sheppard's Cross Motion for
Summary Judgment (Doc. #27). For the following reasons, both motions are denied
without prejudice.


I.      BACKGROUND[1]

A.      *The 1988 Fires*

In November 1988, two fires occurred in southeast Kansas City. The firefighters
who arrived on the scene extinguished the first fire. A second fire began in a trailer
containing 25,000 pounds of ammonium nitrate and fuel oil, which were used by a
construction company to blast through bedrock. As the firefighters began trying to
extinguish the second fire, the trailer exploded, immediately killing all six firefighters. A
fire truck parked next to the trailer disintegrated. State and federal investigations
followed. But the state investigation was later abandoned, and the federal investigation
became dormant.

---

[1] Unless otherwise noted, the facts in this section are uncontroverted by the parties.
*See* Doc. #21; Doc. #27-1, at 5-22; Doc. #31, at 2-3.

In 1994, the federal investigation was revived. In 1996, Darlene Edwards, Richard Brown, Earl "Skip" Sheppard, George "Frank" Sheppard, and Bryan Sheppard were indicted in this Court on arson charges for the 1988 fires. *United States v. Sheppard*, No. 96-CR-0085-FJG (W.D. Mo.) ("the Sheppard criminal case"). The trial began on January 13, 1997. During trial, the government did not present eyewitness testimony or physical evidence directly linking the defendants to the fires. Each defendant maintained his or her innocence throughout the trial. On February 26, 1997, the jury found all defendants guilty of aiding and abetting an act of arson which resulted in the deaths of six firefighters. Each defendant was sentenced to life imprisonment.

### B. The Star's Articles

Beginning in 2007 and continuing through 2009, *The Kansas City Star* ("the *Star*") newspaper published a series of investigative articles alleging government misconduct in the Sheppard criminal case. Doc. #21-1, at 26.[2] According to the Department of Justice ("the DOJ"), the *Star*'s "articles asserted that several government witnesses lied at trial," "government representatives used coercive tactics…to fabricate inculpatory evidence or to dissuade witnesses from testifying about exculpatory evidence," and "suppressed and/or newly-discovered evidence indicated that persons other than the convicted defendants carried out the arson." *Id.* at 26.

### C. The Criminal Division's Investigation

In July 2008, the United States Attorney for the Western District of Missouri asked the DOJ to review the *Star*'s allegations "to avoid any appearance of partiality." *Id.* The Office of the Deputy Attorney General assigned the DOJ's Criminal Division to review the *Star*'s allegations. *Id.* The Criminal Division assembled a team, which included a Criminal Division prosecutor and a Special Agent from the DOJ's Office of Inspector General, to conduct the investigation (hereinafter, "the review team"). *Id.* at 30. A Special Agent from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") "was

---

[2] The Court's citations to page numbers refer to the pagination applied by the Court's CM/ECF system to documents filed by the parties.

assigned to act as a liaison with the ATF, providing assistance in obtaining relevant reports and information." *Id.*

From 2008 to 2011, the review team "conducted an extensive investigation." *Id.* The review team interviewed individuals identified in the *Star*'s articles as well as other civilians and law enforcement officers. *Id.* They "secured the files of the assigned AUSA Paul Becker, and reviewed those materials along with the 4,000 page trial transcript." *Id.* They also "located three tapes in [John] Barchers' ATF file, which appear to be conversations between Barchers [who was a witness for the government] and [REDACTED]." *Id.* at 37 n.8.[3] The review team "was unable to determine whether the tapes and/or transcripts were provided to the defense, and…was unable to interview Barchers before his death." *Id.* The review team determined a written statement from Barchers, which recounted admissions by Frank Sheppard, Earl Sheppard and [REDACTED] and statements by [REDACTED] that she thought Frank Sheppard and Earl Sheppard "had something to do with the explosion," and his grand jury testimony were provided in discovery. *Id.* Finally, the review team obtained and reviewed several post-trial affidavits by individuals who recanted their trial testimonies or asserted they had other information related to the arson. *Id.* at 31.

At the conclusion of the investigation, a twenty-page memorandum[4] (hereinafter, "the memorandum") was sent to Lanny Breuer, Assistant Attorney General, from Kevin Carwile, Chief, Capital Case Unit; James Trusty, Acting Chief, Organized Crime and Gang Section; and John Cox, Trial Attorney, Organized Crime and Gang Section. *Id.* at 25. The memorandum went "through" Jason Weinstein, Deputy Assistant Attorney General. *Id.* According to the memorandum, "[t]he review was not, and was not intended to be, a re-investigation of the arsons." *Id.* at 26. "Rather, the review was intended to address the *Star*'s assertions that the defendants may have legitimate claims of actual innocence." *Id.*

---

[3] When the DOJ later produced the memorandum in response to FOIA requests, its redactions were blacked out. To avoid any confusion, the Court utilizes "REDACTED" for those portions that were blacked out.

[4] In this section, the Court's review of the memorandum is limited to the redacted version of the memorandum. *See* Doc. #21-1, at 25-44.

The memorandum was divided into five sections.  *Id.* at 26-27, 31-44.  Section One addressed the *Star*'s allegation that five individuals allegedly gave false trial testimony.  *Id.* at 31-32.  The review team interviewed two witnesses, although their names and identifying information were redacted from the memorandum.  *Id.*  The review team reported both witnesses confirmed they testified truthfully.  *Id.* at 31.  The memorandum indicated one witness recanted when talking with the *Star* because the witness feared retaliation and did it "out of sympathy for [REDACTED]."  *Id.* at 32.  The review team noted there was some information it did "not consider material to claims of actual innocence" that was not provided to defense counsel.  *Id.*  That information was redacted from the memorandum.

In Section Two, the review team discussed the allegations of undue pressure or coercion.  *Id.* at 33-37.  The *Star* reported the government, and more specifically, Special Agent True, attempted to coerce twelve individuals who did not testify, allegedly for the purpose of persuading them to falsely implicate the defendants or dissuade them from exculpating the defendants.  *Id.* at 33.  The review team interviewed eight of the twelve individuals, but the identities of those interviewed were redacted in the memorandum.  *Id.* at 33-37.  The review team also "interviewed numerous current and former law enforcement officers who had worked at various times on the investigation – all of whom reported that neither Special Agent True nor AUSA Becker placed undue pressure on witnesses or otherwise strayed from the bounds of professional conduct during the investigation and prosecution."  *Id.* at 33.  The review team stated that "[o]f the four individuals who purported to offer facts underlying their claims of coercion - [REDACTED] - three provided stories that were contradicted by the particular agents involved, as well as by statements of other agents and officers involved, as well as by statements of other agents and officers about the manner in which the investigation was conducted."  *Id.* at 36.  One individual "provided an account that [was] unsupported and simply unbelievable."  *Id.*  Another individual "was so lacking in credibility that [REDACTED]."  *Id.* at 36.

Section Three discussed exculpatory evidence that was allegedly withheld.  *Id.* at 37-40.  The memorandum stated the *Star* reported the government may have ignored or

suppressed information favorable to the defense provided by Debra Cearley, Ella Hutton, Patti Smith, and another individual whose name was redacted. *Id.* at 37. The review team interviewed some of the individuals, but the number and identities of the witnesses interviewed was redacted. *Id.* The review team concluded some information "does not appear to have been produced prior to trial." *Id.*

Although Section Four's heading was partially redacted (i.e., "Allegations Regarding Information [REDACTED]"), the memorandum's introduction, which summarized each section, indicated this section referred to the *Star* uncovering evidence. *Id.* at 27. The summary continues, "[t]he review team found that the government disclosed substantial potentially exculpatory information prior to trial, including information suggesting that [REDACTED] others may have been involved in the arson...." *Id.* Nevertheless, the review team "concluded...the information provided by these witnesses would not have called into question the defendants' guilt of the crimes charged." *Id.* at 41.

In Section Five, the review team stated that, during its investigation, it "identified several newly-developed pieces of information that were not previously known to the prosecution." *Id.* at 43. According to the review team, "this newly-developed information suggests that [REDACTED] may have been involved in the arsons in addition to – and not to the exclusion of – the defendants." *Id.* The review team determined this information "would not have called into question the defendants' guilt of the crimes charged." *Id.*

### D. The DOJ's FOIA/PA Unit

The DOJ's Freedom of Information Act and Privacy Act Unit ("FOIA/PA Unit") is responsible for processing FOIA and Privacy Act requests seeking information from the Criminal Division. Doc. #21-1, at 1. When initiating a search for records responsive to a FOIA request, the FOIA/PA Unit's "standard practice...is to send out to the Criminal Division section or component most likely to maintain records a form memorandum concerning the request" accompanied by the FOIA request. *Id.* at 4. The receiving section is instructed to review the request, "[s]earch all records and file systems in [the]

Section," and "[r]espond on the attached sheet advising [the FOIA/PA Unit] of any files located pertaining to the subject matter of the request, including records stored at the Federal Records Center(s)." *Id.* at 4-5. The receiving section is also directed to copy all records located and attach the copies to its response. *Id.* at 5.

### E.    The Star's FOIA Requests

In July 2011, the *Star* made a FOIA request for "the entire investigative report authored by John Cox...and Pam McCabe…into the 1995-1997 prosecution of five defendants convicted in a 1988 explosion in Kansas City that killed six firefighters." Doc. #21-1, at 3. In response, the Criminal Division informed the *Star* that it located one responsive file - i.e., the memorandum. *Id.* The Criminal Division informed the *Star* that it was withholding portions of the final version of the memorandum subject to Exemptions 6, 7(C), and 7(D) of the FOIA. *Id.* The Criminal Division released three pages in full, fifteen pages in part, and withheld two pages of the final version of the memorandum. *Id.* at 3-4, 23-44.

In August 2011, the *Star* submitted another FOIA request. *Id.* at 4, 46-47. This time, the *Star* asked for "copies of all the underlying documents, such as field documents and/or reports of interviews, created by John Cox...and Pam McCabe...to produce their investigative report into the 1995-1997 prosecution of five defendants…."; "the original request for the investigation from former U.S. Attorney John Wood"; "memoranda created within the DOJ as to the scope and/or nature of the investigation"; "documents or memo[randa] relating to whether the investigators should have subpoena power as part of their probe"; "logs or listings of tape-recorded interviews of witnesses from the original investigation by the ATF that were turned over to McCabe and Cox for their review[;] and "any memoranda relating to the Cox/McCabe report during the editing stage of the process." *Id.*

Regarding the *Star*'s second FOIA request, the FOIA/PA Unit sent search requests to three sections in September 2011. *Id.* 5-6. One request was sent to the Organized Crime and Gang Squad ("OCGS") of the Criminal Division. *Id.* at 5. OCGS was responsible for reviewing the *Star*'s allegations, and according to the FOIA/PA Unit,

OCGS was the section most likely to maintain responsive records.  *Id.*  In response to the search request, OCGS sent three boxes of records to the FOIA/PA Unit.  *Id.*

Another request was sent to the Capital Case Unit ("CCU") "to search for potentially responsive records of one former OCGS staff member."  *Id.*  More specifically, the Information and Technology Management Team ("ITM") searched a CCU custodian's email and hard drive for certain search terms (i.e., "Kansas City," "KC," "Sheppard," and "Firefighters") during the timeframe of June 2011 to February 2012.  *Id.*  The search yielded no responsive records.  *Id.*

The third request was sent to the Office of the Assistant Attorney General.  *Id.* at 6.  A search of one Deputy Assistant Attorney General custodian's hard-copy files was conducted.  *Id.*  This custodian's emails were not searched because he was not employed by the Criminal Division during the request's date range.  *Id.*  ITM also searched one former Deputy Assistant General custodian's emails for specific terms (i.e., "Kansas City," "KC," "Firefighters Case," "United States v. Sheppard," and "subpoena") between June 1, 2008, and October 31, 2001.  *Id.*  According to the DOJ, the search resulted in one document that was not responsive to the request.  *Id.*

### F.      *Sheppard's FOIA Requests*

On February 2, 2012, Sheppard made a FOIA request.  Doc. #21-1, at 6, 52-53. He sought an unredacted copy of the memorandum dated July 9, 2011, and "[a]ny and all additional reports, addendums, tapes, notes or other materials associated with this investigation by the Office of Inspector General or the Department of Justice…."  *Id.* According to the DOJ, because the FOIA/PA Unit was already in possession of the responsive records, a search for responsive records was not initiated.  *Id.* at 6.

In April 2016, Sheppard, through his counsel, made another FOIA request, asking for "the opportunity to copy and inspect public records including and related to the July 8, 2011 Department of Justice – Criminal Division Memorandum...regarding 'Review of *Kansas City Star* Allegations Regarding the Prosecution of *United States v. Sheppard*'" as well as "all notes, recordings, and transcripts pertaining to the Inspector General's investigation that produced that memorandum."  *Id.* at 7, 55.  According to the

DOJ, "[b]ased upon the three prior FOIA requests, the records being sought by [Sheppard] were already searched for, collected, and in the possession of the FOIA/PA Unit." *Id.* at 7.

In November 2016, the DOJ informed Sheppard's counsel that "a search has been conducted in the appropriate section" and 450 pages responsive to his FOIA request were located.[5]  *Id.* at 7, 69-70.  The DOJ informed Sheppard that three pages were appropriate for full release, thirty-five pages were appropriate for partial release, and 412 pages were exempt from disclosure pursuant to the FOIA's Exemptions 5, 6, 7(C), and/or 7(D).  *Id.* at 69-70.

In December 2016, Sheppard administratively appealed the DOJ's decision related to his FOIA request.  Doc. #21-1, at 72-75.  In February 2017, Sean O'Neill, Chief of the Administrative Appeals Staff for the DOJ's Office of Information Policy, sent a letter to Sheppard's counsel stating he received and reviewed the appeal.  *Id.* at 81. O'Neill determined the records responsive to Sheppard's request were exempt from the access provision of the Privacy Act.  *Id.* at 81.  Pursuant to the FOIA, O'Neill concluded the Criminal Division properly withheld certain information because the information was protected from disclosure by Exemptions 5, 6, and 7(C).  *Id.* at 81-82.  He also determined "it is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions."  *Id.* at 82.

### G.    Sheppard's Release from Prison

In 2012, the United States Supreme Court held "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  *Miller v. Alabama*, 567 U.S. 460, 465 (2012).  In 2016, the Supreme Court concluded *Miller* applied retroactively on collateral review.  *Montgomery v. Louisiana*, 136 S. Ct. 718, 732-37 (2016).  Sheppard was a minor at the time of the arson in 1988.  Pursuant to *Miller* and *Montgomery*, in March

---

[5]  According to the declaration provided by the DOJ, there were 454 pages of responsive records located.  However, twenty-two of those pages were duplicative. Thus, the responsive records totaled 432 pages.  Doc. #21-1, at 7 n.2.

2017, Sheppard was resentenced to twenty years and released from prison.  The other living defendants[6] in the Sheppard criminal matter remain incarcerated.

### H.    This Lawsuit and the Pending Motions

In December 2017, Sheppard filed this matter pursuant to the FOIA.  Doc. #1. He alleges the DOJ failed to perform an adequate search for responsive documents, failed to produce responsive documents, failed to provide adequate justification for the exemptions it claims, failed to meet the requirements of segregability, and the redactions are overly broad.  *Id.*  Sheppard asks the Court to order the DOJ to (1) disclose the entirety of the requested public records related to and including the memorandum and all notes, recordings, and transcripts related to the DOJ's review that produced the memorandum, and (2) provide support for the exemptions cited, including an index of the materials withheld and redacted for the Court to inspect in camera.  *Id.* at 17.

Both parties filed motions for summary judgment.  Docs. #18, 27.  Those motions became fully briefed in mid-March 2019.  On April 10, 2019, the Court directed the DOJ to provide all disputed documents to Chambers for an *in camera* review.  Doc. #33.  On May 9, 2019, the DOJ provided two binders of documents to Chambers: (1) a binder with all unredacted documents and redacted duplicates totaling 829 pages, and (2) another binder with all unredacted documents and unredacted duplicates totaling 829 pages.  Doc. #36.

## II.    STANDARD

In a FOIA case, the standards set forth in Rule 56 of the Federal Rules of Civil Procedure apply.  *Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993). Summary judgment is proper if "the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Id.* (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).  To defeat summary judgment, the nonmoving party must "present evidence from which a

---

[6] Earl "Skip" Sheppard passed away in July 2009.

jury might return a verdict in his favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986)).

"Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA." *Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1382 (8th Cir. 1985). To meet this burden, "the agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Id.* (internal quotations and citation omitted). "The underlying facts, and the inferences to be drawn from them, are to be construed in the light most favorable to the FOIA requester." *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden "on the agency to sustain its action" and directs the district courts to "determine the matter de novo." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754-55 (1989) (citing 5 U.S.C. § 552).

## III.    DISCUSSION

### A.    *Parties' Responses to Facts Asserted in Support of Summary Judgment*

Before delving into the substantive issues, the Court must first address the parties' responses to the opposing party's statement of facts. When responding to Sheppard's Statement of Material Facts, the DOJ admitted the vast majority of facts, properly disputed some facts, and attempted to dispute other facts or portions of facts. Doc. #31, at 2-3. With regard to the DOJ's attempts to dispute facts or portions of facts, the DOJ, in several instances, failed to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

First, there are several facts to which the DOJ stated it was without sufficient information to admit or deny, and therefore, it denied Sheppard's facts. Doc. #31, at 2-3 (¶¶ 57-58, 96-100, 102-03). Generally, a party disputing a fact cannot claim they lack information to dispute a fact. Rather, the Federal Rules of Civil Procedure and the Court's Local Rules require a party "cite[] to particular parts of materials in the record" to

controvert an assertion of fact.  Fed. R. Civ. P. 56(c); L.R. 56.1(b)(1).  If a party fails to specifically controvert the opposing party's fact, the fact is deemed admitted for purposes of summary judgment.  L.R. 56.1(b)(1).  Because the DOJ did not cite to anything in the record to controvert the facts asserted by Sheppard, these particular facts are deemed admitted.

Second, the DOJ admits certain parts of Sheppard's facts but then does not dispute or address the remainder of those facts.  Doc. #31, at 2-3 (¶¶ 28, 29, 42, 48, 60, 62, 66, 67, 72, 87, 94).  To the extent the DOJ is disputing Sheppard's fact because it does not specifically quote the memorandum, the Court relied on the language contained in the memorandum.  To the extent the DOJ is attempting to dispute the facts on some other basis, it has failed to properly do so.  Fed. R. Civ. P. 56(c); L.R. 56.1(b)(1).  Accordingly, these facts are also deemed admitted.

Third, in response to Fact 40, the DOJ admitted a portion of the fact but then denied the remainder of the fact.  Doc. #31, at 2 (¶ 20).  However, the DOJ did not cite anything in the record to support its dispute with the fact.  According to the Local Rules, "[i]f the opposing party controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c)."  L.R. 56.1(b)(1).  Because the DOJ does not cite anything in the record to controvert the remainder of this fact, it is deemed admitted.

In Sheppard's response to the DOJ facts, he failed to properly controvert one fact asserted by the DOJ – Fact 4.  While Sheppard disputes a portion of the fact, he does not cite to anything in the record to support his contention.  Thus, Sheppard has not controverted the fact.  L.R. 56.1(b)(1); Fed. R. Civ P. 56(c).  Accordingly, the remainder of this fact is deemed admitted.

## B.    The Freedom of Information Act

The FOIA "ensure[s] that government is conducted in the open" and "provide[s] wide-ranging public access to government documents."  *Miller*, 13 F.3d at 262; *Miller*, 779 F.2d at 1389.  "FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445

U.S. 136, 150 (1980). The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011); *see also Taylor v. Sturgell*, 553 U.S. 880, 885 (2008); *Crancer v. U.S. Dep't of Justice*, 999 F.2d 1302, 1305 (8th Cir. 1993). The nine exemptions "are 'explicitly made exclusive,' and must be 'narrowly construed.'" *Id.* (quoting *Fed. Bureau of Investigation v. Abramson,* 456 U.S. 615, 630 (1982)).

### C.    Adequacy of the DOJ's Search for Documents

Both parties seek summary judgment on the adequacy (or inadequacy) of the DOJ's search for documents responsive to Sheppard's FOIA requests. The adequacy of an agency's search for documents responsive to a FOIA request "is judged by a standard of reasonableness, i.e., the agency must show beyond material doubt...it has conducted a search reasonably calculated to uncover all relevant documents." *Miller,* 779 F.2d at 1383 (internal quotations and citation omitted). "[T]he search need only be reasonable; it does not have to be exhaustive." *Id.* (citation omitted). The adequacy of the search "must be determined in relation to the circumstances of the case." *Id.* at 1385.

The agency may establish its search was reasonable "through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Id.* at 1383 (citation omitted); *see also Pollack*, 879 F.2d at 409.

> Despite this weight to be accorded to agency affidavits, the burden remains on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found. If the agency has not made this showing, then the requester can avert a motion for summary judgment merely by demonstrating some reason to think that the document would have turned up if the agency had looked for it, e.g., by showing that the document originated with the agency or that the agency is set up to retrieve just that kind of document. But once the agency has shown by convincing evidence that its search was reasonable, i.e., that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith.

*Id.* (internal citations omitted).  According to the Eighth Circuit, granting summary judgment in favor of the agency "would be improper if the adequacy of the agency's search [was] materially disputed on the record, for such a dispute would indicate that material facts were still in doubt."  *Id.*  Also, if the FOIA requestor shows circumstances indicating additional search procedures were available without the agency "having to expend more than reasonable effort, then summary judgment would be improper."  *Id.* at 1385.

The DOJ claims it made a good faith effort to search for responsive materials, and provides a declaration explaining the scope and method of the DOJ's search.  Doc. #21-1, at 4-6.  In response to the *Star*'s second FOIA request, which is similar to Sheppard's second FOIA request, the FOIA/PA Unit sent out search requests to two units in the Criminal Division (i.e., OCGS and CCU), the Office of the Assistant Attorney General, and a Deputy Assistant Attorney General.  Doc. #21-1, at 4-6; Doc. #31, at 4.

Because the Criminal Division investigated the allegations of prosecutorial misconduct, the DOJ "gathered and created a smaller limited universe of documents and records, consisting mainly of prior witness statements, memoranda of interviews, several preliminary 'drafts' of the investigative report, and the 'final' investigative report as completed."  Doc. #31, at 5.  According to the DOJ, "[b]ecause this was not a retrial of the underlying criminal case, [the DOJ] had a significantly smaller number of records in its possession."  *Id.*

Sheppard argues the DOJ has failed to show it conducted an adequate search. Doc. #27-1, at 25-26; Doc. #32, at 2-3.  Sheppard contends the DOJ should not have limited its search to certain locations.  Doc. #32, at 3.  He points out the DOJ conducted an "extensive investigation" over three years yet the DOJ indicates the review team only relied on 432 pages.  Doc. #27-1, at 26.  Also, Sheppard observes a number of documents are referenced in the memorandum (e.g., AUSA Becker's files, the trial transcript, Barchers's ATF file, three tapes) but are not included in the DOJ's *Vaughn* index.[7]  Doc. #32, at 2.  Although the DOJ received four FOIA requests, Sheppard notes the DOJ searched for records responsive to only two requests, and he contends the

---

[7] The DOJ's *Vaughn* index is discussed more fully, *infra* section III(D)(1).

DOJ should have searched for responsive records when it received each request. Doc. #27-1, at 26 Doc. #32, at 3 (noting the DOJ, when responding to Sheppard's summary judgment motion, contradicted the affidavit previously submitted by dening no new search was conducted).

Sheppard also directs the Court's attention to the DOJ's representation that the memorandum was "forwarded up the DOJ's chain of command, where it was reviewed for sufficiency at multiple levels, including immediate superior, the Chief of the Unit, the Office of the Deputy Attorney General and other decision-makers in the final review process." Doc. #31, at 10. Yet, the DOJ does not inform the Court that search requests were sent to any of these individuals. *Id.*; Doc. #27-1, at 26.

Finally, Sheppard maintains the DOJ failed to establish it conducted an adequate search because much is unknown about the search. According to Sheppard, the following details about the search are unknown: (1) where the boxes containing responsive documents were located, (2) whose files were searched, (3) whether the files of the memorandum's authors were searched, (4) whether electronic searches were conducted or only hard copy searches, (5) why certain search terms were used but other terms were not used to search, (6) whether any employees were interviewed to determine where responsive records may be located, and (7) whether any searches were made or requested of the Office of the Inspector General. Doc. #27-1, at 25-26.

In response to Sheppard's arguments, the DOJ does not address the multiple unknowns identified by Sheppard. The DOJ again points out the FOIA/PA Unit sent a search request to the OCGS, the CCU, the Office of the Assistant Attorney General, and "[o]ne Deputy Assistant Attorney General." Doc. #31, at 4. The DOJ also informs the Court "[t]he search terms included 'Kansas City,' 'KC,' 'Firefighters Case,' 'United States v. Sheppard' and 'subpoena.'" *Id.* Beyond these two representations, no additional information about the search is provided by the DOJ, and the questions raised by Sheppard remain unanswered.

Instead, the DOJ relies on a Fourth Circuit decision to support its position that it conducted an adequate search. Doc. #31, at 5 (citing *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353 (4th Cir. 2009)). As proscribed by the FOIA and similar to the

Eighth Circuit, *Rein* states "an agency shall make reasonable efforts to search for the records in electronic form or format…." *Rein*, 553 F.3d at 359 (quoting 5 U.S.C. § 552(a)(3)(C)). An agency's search "means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." *Id.* (quoting 5 U.S.C. § 552(a)(3)(D)). Beyond stating an agency's search must be reasonable and the agency must review records to locate responsive records, *Rein* does not support the DOJ's argument that its search was adequate.

In *Rein*, the United States Patent and Trademark Office ("USPTO") detailed the scope and nature of its search for records responsive to a FOIA request by providing interrogatory answers and declarations from its FOIA's Officer. *Id.* at 359. The FOIA Officer explained the request to search records "was sent to six offices he determined were "likely to have any responsive documents." *Id.* He informed the Court that the requests "were crafted to maximize the inclusion of as many responsive documents as possible." *Id.* at 360. In that regard, the employees were requested to do the following:

> [C]onduct thorough paper and electronic searches using: (1) the FOIA request(s) provided to them; (2) an electronic keyword search list that [the FOIA Officer] provided that included cues found in the basic FOIA requests such as law firm names, company names, relevant patent numbers, federal agency names, as well as several additional related words or phrases [the FOIA Officer] conceived for the search request that were not specifically mentioned in any of the FOIA requests, but might have produced responsive records, (e.g., isolated terms such as "NTP," and alternate spellings such as ["]Re–Exam," for "Reexamination" etc.); and (3) instructions to employ any other conceivable search formulation not listed in the search request that might turn up responsive documents.

*Id.* Additionally, "employees were instructed to provide 'any and all other documentation' relating to the NTP reexamination that was not specifically described in the FOIA requests, but which was 'responsive to the topic of interest expressed therein.'" *Id.* Employees were informed the provided search terms were "by no means all-inclusive," "were instructed not to 'limit searches to only the above-listed keywords,'" search "using all spelling variants," and account for misspellings. *Id.* The employees were given "[e]xamples of variations in search terms and potentially responsive communications." *Id.*

In addition to the measures identified above, the FOIA Officer also had searches performed on "remnants of e-mail accounts of several former [USPTO] employees...who might have had any connection" to records sought in the FOIA request. *Id.* He also "personally supervised some of the searches…as a spot-checking measure to ensure that search instructions were being followed and the methods employed were adequate." *Id.* And he "consulted with other FOIA coordinators to monitor the status of searches and identify 'possible additional locations of responsive records.'" *Id.* After the FOIA Officer received some interim disclosures of responsive documents, he reexamined the FOIA request and "determined that the request appeared to specify a few additional items that may not have been definitively included in" the search requests that were sent. *Id.* Consequently, the FOIA Officer sent a "broadened search request to three of the offices that had received the original search" and an additional office that did not receive the initial request. *Id.* at 360-61. When the FOIA Officer received any documents responsive to FOIA requests, he reviewed the documents, determined whether the documents were responsive to the FOIA request, removed duplicate documents, and determined what documents should be redacted or withheld based on an exemption. *Id.* at 362. If the FOIA Officer received incomplete searches from some units, he followed up with those units. *Id.*

Unlike the declaration in *Rein*, the DOJ's declaration, with few exceptions, does not provide specifics about the nature and scope of its search. The DOJ identified OCGS as the section "most likely to maintain responsive records." But the DOJ provides little information about the "search request" it sent to OCGS. What is known about the request is (1) it was made on September 15, 2011; (2) the FOIA/PA Unit's standard practice was used (i.e., providing a form memorandum telling the recipient to review the FOIA request, search all records and file systems, use the attached sheet advising the DOJ of any files located, and make copies of all records); and (2) "three boxes of records were returned" by OCGS on September 26, 2011. Doc. #21-1, at 4-5. No additional information is provided. By way of example, the declaration does not identify which individuals in the OCGS received the records request. Similarly, the

declaration is silent as to which offices, locations, and/or units of the OCGS received the records request.

Additionally, regarding OCGS, the declaration does not indicate, for example, the types of searches that were conducted; the parameters of the searches; whether electronic and/or physical documents were searched; the custodians whose documents (electronic and/or physical) were searched; and the shared files (electronic or hardcopy) and/or shared computer drives that were searched. To the extent email or other electronic searches were conducted, the declaration does not indicate if search terms were provided to OCGS, what search terms were used, whether the search terms provided for potential misspellings, and the date range of the search.[8]

Although the review team consisted of, at the time, an employee from the Criminal Division and an employee from the Office of Inspector General, the DOJ's declaration does not provide information indicating records requests were sent to the review team members. Further, the DOJ's declaration does not demonstrate the memorandum's authors, other individuals who investigated and/or participated in the *Star*'s allegations, the individuals who provided documents to the review team, the individuals who reviewed and/or revised the memorandum, and the recipients of the memorandum received records requests and searched for responsive records. Although the memorandum indicates the review team "reviewed post-trial affidavits by several individuals" (Doc. #21-1, at 31), no post-trial affidavits were provided to the Court in the DOJ's *in camera* submission, and the *Vaughn* index does not list any post-trial affidavits. As a result, the Court does not know who received a records requests, and if the proper individuals received a records request.

---

[8] With regard to the search request sent to the CCU, the DOJ provides additional information. Specifically, the DOJ informs the Court that the search request to CCU was for "potentially responsive records of one former OCGS staff member," identifies the sources searched, provides the timeframe that the search targeted, and listed the search terms. Doc. #21-1, at 5. However, the DOJ did not identify the former OCGS staff member; the date range searched (June 2011 to February 2012), which does not cover the timeframe during the investigation, is not explained; and it is unclear if the search terms were fixed and/or allowed for misspellings.

While the DOJ's declaration does not need to describe "with meticulous documentation the details of an epic search for requested records," the DOJ's declaration should have "describe[d] what records were searched, by whom, and through what process" and demonstrated "the search was reasonably calculated to uncover all relevant documents.'" *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (citation omitted); *see also Nation Magazine, Wash. Bureau v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Defs. of Wildlife*, 623 F. Supp. 2d at 91).  In addition, the DOJ's declaration failed to "explain the scope and method of [its] search in a *non-conclusory* fashion."  *Hooker v. U.S. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 51-52 (D.C. Cir. 2012), *aff'd*, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014).  Based upon the evidence presented to this Court, the DOJ has not met its burden of establishing "beyond material doubt...it has conducted a search reasonably calculated to uncover all relevant documents."  *Miller,* 779 F.2d at 1383.[9]

---

[9] *See also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (vacating the district court's entry of summary judgment on the adequacy of the search because the Department of State's affidavit did not adequately describe its search for records, and directing the Department of State to submit a reasonably detailed affidavit upon remand); *Roseberry-Andrews v. U.S. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 23-25 (D.D.C. 2018) (finding the agency failed to establish its search was adequate because, inter alia, the declaration did not provide search terms for two offices, and failed to explain why other offices used inconsistent terms); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 960 F. Supp. 2d 101, 152-53 (D.D.C. 2013) (finding the CIA failed to establish its search was adequate because its declaration did not state "whether the CIA searched for the indices themselves or what search terms the CIA used to identify responsive records" and did "not provide sufficient information for the Court to conclude that its search methods were reasonably calculated to uncover all relevant documents."); *Hooker*, 887 F. Supp. 2d at 51-52 (finding the agency's description of the search was "too cursory to persuade the court that the search was adequate" and noting, among other things, the agency's declaration identified the offices to which the search requests were sent but did not describe the search methodology used, what records were searched, who searched the records, and the process or search terms); *Hall v. Cent. Intelligence Agency*, 881 F. Supp. 2d 38, 59-60 (D.D.C. 2012) (denying summary judgment for the CIA and granting summary judgment in favor of plaintiff because the CIA only searched the systems "most likely" to contain responsive documents, and did not search all systems "likely to produce responsive documents.").

Due to the lack of information provided by the DOJ, the Court cannot determine whether its search was adequate.  Accordingly, the Court denies without prejudice the DOJ's motion for summary judgment on the issue of the adequacy of its search.  If the DOJ wishes to file a renewed motion for summary judgment, it shall do so within sixty days of this Order.  *See Roseberry-Andrews v. U.S. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 25 (D.D.C. 2018) (noting DHS may support its renewed motion for summary judgment by either conducting additional searches or provide additional representations describing the previously conducted searches).  Because Sheppard's cross-motion for summary judgment on the adequacy of the search directly responds to the DOJ's summary judgment motion and its declaration in support thereof, the Court views it as an "opposition" to the DOJ's motion for summary judgment, rather than a cross-motion for summary judgment.  To the extent it is a cross-motion for summary judgment, it is denied without prejudice.

### D.      Withholding of Documents and Information

FOIA requires an agency disclose requested records unless a record falls within one of nine exemptions.  "These exemptions are explicitly made exclusive and must be narrowly tailored."  *Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 694 (8th Cir. 2012) (quoting *Milner*, 562 U.S. at 565).  The DOJ applied four exemptions to withhold certain documents and information from release in response to Sheppard's request: Exemptions 5, 6, 7(C), and 7(D).  The DOJ also provided a *Vaughn* index.  Doc. #22-1.

### (1)      The DOJ's *Vaughn* Index

To assist courts in determining whether an agency has satisfied its burden under the FOIA, a *Vaughn* index may be used.  *Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209 (8th Cir. 2008) (citation omitted).  "The *Vaughn* court recognized the problems associated with FOIA requests for claimed-exempt documentation, including the requesting party's inability to advocate its position in light of its lack of knowledge and the court's difficulty reviewing massive documentation."  *Id.* (citing *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973)).  A *Vaughn* index

"ensure[s] an 'effectively helpless' party's right to information 'is not submerged beneath governmental obfuscation and mischaracterization'" and allows courts to "effectively and efficiently…evaluate the factual nature of disputed information." *Id.* (quoting *Vaughn*, 484 F.2d at 826).

"[A] proper *Vaughn* index provides a specific factual description of each document sought by the FOIA requester. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place." *Id.* If the agency claims a document is exempt, the exemption must be identified, and the agency must explain why the exemption applies to the document. *Id.* at 1209-10 (citation omitted).

Other than the DOJ's failure to include in its *Vaughn* index those documents referenced in the memorandum, Sheppard does not argue the DOJ's *Vaughn* index is not sufficient. For each document, the DOJ's *Vaughn* index provides the caption, title, or a description of the document; the author of the document (if known); the recipient(s) - generally (e.g., "CRM Review Team Atty.") or by name - of the documents; date of the document (if known); the FOIA exemption(s) claimed; whether the document was withheld in full or redacted in part; the basis for the withholding or redaction; and length of the document. Doc. #22-1. The DOJ's *Vaughn* index contains the identifying information, identifies the exemption(s) claimed, and provides an explanation for the exemption(s) claimed.

However, the Court notes some discrepancies in the DOJ's *Vaughn* index. First, in the descriptions of Documents 52 through 68, the DOJ states these documents are withheld in full. Doc. #22-1, at 65-80. But the DOJ marks the column labeled "RIP," which indicates the document was "released in part." *Id.* at 1, 65-80. The DOJ's declaration does not shed light on the situation because it states Documents 52 through 68 (and others) were "released in full, withheld in part, and/or withheld in full." Doc. #21-1, at 9. However, the declaration later states Documents 52 through 68 "were segregated, and released in part in response to Plaintiff's FOIA requests." *Id.* at 21. Based upon the DOJ's differing representations, it is unclear if these records were withheld in full or released in part. Unlike Document 69, for which the DOJ provided the

redacted version (Doc. #21-1, at 25-44) that was produced to Plaintiff and submitted the unredacted version to the Court for in camera review, the DOJ does not identify which portions, if any, of Documents 52 through 68 (which range from a few pages to 78 pages) were released.

Second, the Court notes the DOJ's *Vaughn* index indicates Documents 42, 45, 46, and 51 each contain one Memorandum of Investigation.  Doc. #22-1, at 53-54, 57-59, 64-65.  However, the DOJ's in camera submission of these documents did not include only one Memorandum of Investigation.  Document 42 contains two, Documents 45 and 46 contain three, and Document 51 contains eight.  While some of the additional memoranda may be duplicates of other documents, the additional memoranda are not duplicative of the memorandum first appearing in each Document.  Additionally, *Vaughn* index indicates each document consists of one or two pages, but because each document contains multiple memoranda, there are more than one or two pages contained in each document.

Third, with regard to Documents 56, 58, 59, 60, 61, 62, 64, and 68 provided to the Court for in camera review, the DOJ supplied the email described in the *Vaughn* index.  The DOJ also provided the attachments to each email.  However, the *Vaughn* index does not identify the attachments to each email, explain why the attachments are being withheld, and/or indicate the length of the attachments.

Finally, Document 63 is an email that purportedly encloses attachments.  The attachments were not provided to the Court.  Further, the attachments are not identified in the *Vaughn* index, the DOJ does not explain with the attachments are being withheld, and the DOJ does not indicate the length of the attachments.

As noted *supra*, the purpose of the *Vaughn* index is to provide Sheppard with sufficient information so that he is able to advocate his position.  *Mo. Coal. for Env't Found.*, 542 F.3d at 1209.  The *Vaughn* index should also allow the Court to "effectively and efficiently…evaluate the factual nature of disputed information."  *Id.*  While the Court has the benefit of viewing the documents, at least those documents submitted, in camera, Sheppard does not have that benefit.  Moreover, with regard to the documents that were released in part (Documents 52 through 68), the Court has not been provided

sufficient information to determine what portions were released, and if the portions that were withheld were properly withheld.  Accordingly, the DOJ shall submit an amended *Vaughn* index that addresses the discrepancies identified by the Court.  The DOJ's amended *Vaughn* index shall be filed within fourteen days of this Order.[10]

### (2)    Executed Privacy Waivers

Generally speaking, Exemption 6 and Exemption 7(C) protect a person's right to privacy.  Before addressing the specifics of both exemptions,[11] the Court must consider whether a person may waive his/her right to privacy in his/her name and personal information in the requested records, and if so, does the executed waiver override the exemption.

Pursuant to the Privacy of 1974, 5 U.S.C. § 552a, Sheppard provided the DOJ with an executed privacy waiver authorizing the DOJ "to release any…information, statements, and/or documents to the parties to [this matter] and to the public."  Doc. #27-2, at 44.  During the briefing of the parties' summary judgment motions, Plaintiff filed privacy waivers executed by Debra Cearley, Joe Denger, Buster Lee Hower, Mike DeMaggio, Carrie Neighbors, Shannon Neighbors, Nadine Smith, Patti Smith, Larry Summers, Orval Alan Bethard, Richard Wayne Brown, Darlene Marie Edwards, and George Frank Sheppard.  Doc. #27-2, at 45-53; Doc. #32-1, at 3-6.[12]  Sheppard argues

_____

[10] To the extent the DOJ's amended *Vaughn* index changes the documents submitted to the Court for *in camera* review in any way (e.g., numbering, supplemental documents, etc.), the DOJ shall provide the updated and/or supplemental documents to the Court contemporaneously with the filing of its amended *Vaughn* index.

[11] Exemption 7 prevents the release of records or information if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  Exemption 6 pertains to "personnel and medical files," which must be withheld if disclosure "would constitute a clearly unwarranted invasion of personal privacy."  § 552(b)(6).  "The adverb 'clearly,' found in Exemption 6, is not used in Exemption 7(C).  In addition, whereas Exemption 6 refers to disclosures that would constitute an invasion of privacy, Exemption 7(C) encompasses any disclosure that could reasonably be expected to constitute' such an invasion."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004) (internal quotations and citation omitted).

[12] It is unclear if these privacy waivers were submitted to the DOJ through its FOIA process, or if the privacy waivers were only filed on ECF.

a right to privacy is a personal right that can be waived by the individual. Doc. #27-1, at 35-36. He contends any exemption that rests on preserving a third party's right to privacy cannot be upheld when a knowing and voluntary waiver of that right is provided. *Id.* at 36.

In response to Sheppard's argument, the DOJ contends Sheppard did not cite to any authority supporting his argument that an individual may waive his/her right to privacy, and the FOIA exemptions cannot be disregarded with waiver. Doc. #31, at 16. The DOJ states, "[h]ad Congress intended such a result, it would have included a right to waiver in FOIA. It did not." *Id.* In reply, Sheppard refers to the right of an individual to waive his or her right to privacy as being fundamental, and therefore, he did not believe citations were required. Doc. #32, at 8. He cites to legal authority in his reply brief. *Id.* at 8-9 (citation omitted). The DOJ did not seek leave to respond to the authority cited by Sheppard in his reply brief.

Although not cited by either party, the DOJ's own regulations, which "contain[] the rules" the DOJ "follows in processing requests for records" under the FOIA, explicitly allow a FOIA requester to submit a notarized authorization or declaration signed by the third party permitting the DOJ to disclose records related to the third party to the FOIA requester. 28 C.F.R. §§ 16.1(a), 16.3(a)(4). The DOJ regulation also states the DOJ may require the FOIA requester to "supply additional information if necessary in order to verify that a particular individual has consented to disclosure." *Id.* § 16.3(a)(4).

Although the DOJ regulation alone allows Sheppard to submit privacy waivers executed by third parties, privacy waivers in FOIA matters have been discussed in many cases. In numerous instances, a FOIA request was accompanied by or supplemented with a privacy waiver executed by the third-party about whom the FOIA requester sought information. *See, e.g., Stein v. U.S. Dep't of Justice*, 134 F. Supp. 3d 457, 467 (D.D.C. 2015); *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 28-29 (D.D.C. 2013); *Seme v. Fed. Bureau of Investigation*, 892 F. Supp. 2d 77, 80 (D.D.C. 2012); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 34 (D.D.C. 2012); *Brown v. U.S. Dep't of Justice*, 742 F. Supp. 2d 126, 130 (D.D.C. 2010); *McCoy v. United States*, No. CIVA 1:04CV101, 2006 WL 2459075, at *3 (N.D.

W. Va. Aug. 23, 2006). In other cases, the courts noted the government agency informed the FOIA requester that it would not release information about a third-party unless it received an executed privacy waiver from the third-party. *See, e.g., Gatson v. Fed. Bureau of Investigation,* No. CV 15-5068, 2017 WL 3783696, at *11 n.16 (D. N.J. Aug. 31, 2017), *aff'd,* No. 17-3122, 2019 WL 3451182 (3d Cir. July 31, 2019); *Jett v. Fed. Bureau of Investigation,* 139 F. Supp. 3d 352, 358 (D.D.C. 2015); *Dillon v. U.S. Dep't of Justice,* 102 F. Supp. 3d 272, 279 (D.D.C. 2015); *Calle v. Fed. Bureau of Investigation,* No. 3:10-CV-2362, 2011 WL 3820577, at *1 (N.D. Tex. Aug. 5, 2011), *report and recommendation adopted,* No. 3:10-CV-2362-M, 2011 WL 3837031 (N.D. Tex. Aug. 26, 2011); *Schulze v. Fed. Bureau of Investigation,* No. 1:05-CV-0180, 2010 WL 2902518, at *3 (E.D. Cal. July 22, 2010); *Calvert v. United States,* 662 F. Supp. 2d 27, 29-30 (D.D.C. 2009); *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy,* 181 F. Supp. 2d 356, 363-64 (S.D.N.Y. 2002).

Contrary to the DOJ's arguments, Sheppard, and any individual or entity seeking documents from the DOJ pursuant to FOIA, may provide privacy waivers executed by individuals whose names and information may be included in the requested records. Although thirteen executed privacy waivers have been provided to the DOJ, the record before the Court does not demonstrate the DOJ has reprocessed Sheppard's FOIA request. *See Light,* 968 F. Supp. 2d at 28-29 (stating the FBI reviewed the responsive records for the names and information associated with nine individuals who executed privacy waivers); *Boyd v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,* No. CIV A 05-1096 RMU, 2006 WL 2844912, at *2 (D.D.C. Sept. 29, 2006) (noting that once the privacy waivers were received, the agency could release the requested records "this time with the previously redacted names and identifying information of the people who executed waivers included.").

Given the DOJ's regulation and the case cited above, the Court is not persuaded by the DOJ's argument. The Court directs the DOJ to reprocess Sheppard's FOIA request in light of the privacy waivers executed by Debra Cearley, Joe Denger, Buster Lee Hower, Mike DeMaggio, Carrie Neighbors, Shannon Neighbors, Nadine Smith, Patti Smith, Larry Summers, Orval Alan Bethard, Richard Wayne Brown, Darlene Marie

Edwards, and George Frank Sheppard.  Within thirty days of the date of this Order, the DOJ shall produce the results of its reprocessing of the FOIA request.

### (3)    Claimed Exemptions

As outlined above, the Court has outlined matters that need to be addressed by the DOJ regarding the adequacy of its search, its *Vaughn* index, and the executed privacy authorizations.  To rectify the issues identified by the Court, the DOJ will be providing, at a minimum, an amended declaration and an amended *Vaughn* index, and producing documents (or portions of documents) to Plaintiff containing information about the third parties who executed privacy waivers.  Unless and until the above-mentioned concerns are addressed, the Court cannot analyze the DOJ's application of exemptions or determine whether reasonably segregable portions of records were provided to Sheppard.  Accordingly, the parties' motions for summary judgment on the issues of the DOJ's withholding of documents, application of exemptions, and segregability are denied without prejudice.

If the DOJ wishes to renew its motion for summary judgment or file a new motion for summary judgment, it shall file said motion within sixty days after this Order is entered.  To ensure the most efficient use of the parties' and the Court's time and resources, Sheppard may file a cross-motion for summary judgment in response to the DOJ's summary judgment, instead of contemporaneously filing a motion for summary judgment.  Sheppard's cross-motion shall be filed within twenty-one days of the DOJ's motion for summary judgment.  If the DOJ does not file a motion for summary judgment, Sheppard, if he so desires, may file a motion for summary judgment within eighty-one days of this Order.  This timeframe allows for the DOJ to file its motion for summary judgment, and if it does not, Sheppard will have twenty-one to finalize his motion.

Although the Briefing Schedule provided the parties significantly more time than the Local Rules provide for briefing summary judgment motions, the parties sought and were granted numerous extensions of time when briefing the summary judgment motions addressed in this Order.  Docs. #16-17, 23-26, 28-29, 34-35.  Regarding the parties' future summary judgment motions, the parties shall follow the Court's Local

Rule 7.0 regarding response and reply deadlines.  While the Court will be open to granting extensions of time, it is not inclined to grant significant extensions of time.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies both parties' motions for summary judgment without prejudice.  Within fourteen days of this Order, the DOJ shall file an amended *Vaughn* index.  Within thirty days of this Order, the DOJ shall reprocess Sheppard's FOIA request in light of the privacy waivers filed by Sheppard.  Finally, if the DOJ wishes to file a renewed motion for summary judgment, it shall do so within sixty days of this Order.  Sheppard shall file any cross-motion for summary judgment within twenty-days of this Order, or if the DOJ does not file a motion for summary judgment, Sheppard shall file his motion for summary judgment within eighty-one days of this Order.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE:  August 6, 2019                    UNITED STATES DISTRICT COURT