**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BRYAN E. SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:17-cv-1037-NKL |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Under the Freedom of Information Act ("FOIA") Plaintiff Bryan Sheppard is seeking records concerning a Department of Justice ("DOJ") investigation into a 1988 arson prosecution in Kansas City, Missouri. *See generally* Doc. 17; Doc. 27; Doc. 88. The Court now GRANTS summary judgment in part based on the issues previously raised by the parties in their motions for summary judgment. *See* Doc. 17; Doc. 27. The DOJ shall produce the documents identified herein, with the appropriate redactions, to Mr. Sheppard within sixty days of this Order.[1]

**I.    Factual Background**

**A.  The Fire**

In the early morning hours of November 29, 1988, six firefighters responded to a trailer fire, burning at a highway construction site in Kansas City, Missouri.[2] Shortly after the

---

[1] In setting this deadline, the Court has already taken into consideration the pressures and difficulties posed by the ongoing COVID-19 Pandemic. No extensions will be granted absent extraordinary circumstances.

[2] Unless otherwise stated, the facts presented are drawn from the parties' cross motions for summary judgment, supporting declarations, and the Final Memorandum that was most recently

firefighters arrived, the burning trailer, which contained 25,000 pounds of ammonium nitrate and fuel oil, blew up, killing all six firefighters.  Soon after, a second explosion occurred.  The blasts were strong enough to knock "homes off foundations" and "could [be] heard [from] miles away."  Doc 27-2, at 8, 40.

State and federal investigators set out to determine whether arson caused the explosions. Originally, state officials investigated several individuals who resided in the area, and federal investigators focused on potential connections to organized crime.  *See* Doc 102-1, at 91.  In the state investigation, an informant implicated Mr. Sheppard, who lived near the explosion site.  But the investigation was later abandoned "after [the] jailhouse informant [] was found to have fabricated his information and several other witnesses refused to testify after being housed with Sheppard in prison."  *Id.*  The federal investigation also went dormant.  *Id.*

### B.  The Prosecution

In 1994, the federal investigation was revived by a task force led by the Bureau of Alcohol, Tobacco and Firearms ("ATF").  The renewed investigation identified dozens of people who claimed to have heard admissions from five individuals about their involvement in the arson.  Doc 102-1, at 91.  Mr. Sheppard, as well as Darlene Edwards, Richard Brown, Earl "Skip" Sheppard, and George "Frank" Sheppard were all identified.  *Id.* at 18.  In 1996, those five individuals were indicted on arson charges.  *United States v. Sheppard*, No. 96-CR-0085-

---

produced to Sheppard in redacted form.  *See* Doc. 21; Doc. 27-1; Doc.31. "The [] facts, and the inferences to be drawn from them, are to be construed in the light most favorable to the FOIA requester."  *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989).

2

FJG (W.D. Mo.). After a seven-week trial, a jury found all five defendants guilty of aiding and abetting an act of arson, and each defendant received a life sentence.[3] *Id.*

### C. Kansas City Star Articles

Between 2007 and 2009, the *Kansas City Star* ("the *Star*") published articles alleging government misconduct in the *Sheppard* case. Doc. 102-1, at 89. The *Star*'s "articles asserted that several government witnesses lied at trial," "government representatives used coercive tactics . . . to fabricate inculpatory evidence or to dissuade witnesses from testifying about exculpatory evidence," and "that suppressed and/or newly-discovered evidence indicated that persons other than the convicted defendants carried out the arson." *Id.*; *see also* Doc. 27-2, at 39. For example, the *Star* reported that a "key witness in the case" said "she was pressured to lie at the trial about overhearing [the defendants] planning a theft at the construction site." Doc. 27-2, at 12. Further, the *Star* reported that, in several respects, trial testimony conflicted with earlier statements made by the witnesses. *Id.* at 9.

### D. Department of Justice Review

In July 2008, the United States Attorney for the Western District of Missouri asked the DOJ to review the *Star*'s allegations. Doc. 102-1, at 93. The Office of the Deputy Attorney General assigned the DOJ's Criminal Division to review the allegations. *Id.* The Criminal Division Review Team ("Review Team") included a Criminal Division prosecutor and a Special Agent from the DOJ's Office of Inspector General. A Special Agent from the ATF "was

---

[3] Mr. Sheppard was released from prison in 2017, after the Supreme Court held that mandatory life sentences without parole for those under the age of 18 at the time of their crimes violated the Eighth Amendment and held that the rule applied retroactively. *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016).

assigned to act as a liaison with the ATF, providing assistance in obtaining relevant reports and information." *Id.*

Over the next three years, the Review Team "conducted an extensive investigation." *Id*. This process included interviews with third parties who interacted with the prosecution during the criminal investigation and trial. The review team also interviewed law enforcement and agency personnel who helped with the criminal investigation and prosecution. The substance of each interview was documented in a Memoranda of Investigation ("MOI"). When the investigation closed in July 2011, the Review Team published a Final Memorandum describing its investigation and conclusions. Doc. 102-1, at 88. At first, the Final Memorandum was not public. After requests by the *Star*, a heavily redacted version was produced. Doc. 27-1, at 17; Doc. 22, at 1 n.1.

## II. Procedural Background

In December 2017, Mr. Sheppard filed this case seeking documents from the DOJ's internal investigation. The case was originally assigned to Judge Smith and was reassigned in August 2020. While the case was assigned to Judge Smith, the parties filed cross motions for summary judgment. *See* Doc. 22; Doc. 27-1; Doc. 31; Doc. 32. Mr. Sheppard argued (1) the DOJ failed to conduct an adequate search, (2) the claimed exemptions did not apply, and (3) the DOJ did not release all reasonably segregable information. Judge Smith denied the parties' cross motions for summary judgment, finding that the DOJ had not conducted a sufficient search and a determination on the merits of Sheppard's claim could not be made until a sufficient search was completed.

Over the next year and half, between August 2019 and December 2020, the DOJ failed numerous times to comply with Judge Smith's orders, particularly regarding the adequacy of the

4

DOJ's searches. Mr. Sheppard represented that, because the DOJ failed to conduct adequate searches, describe those searches with clarity, and compile a comprehensive *Vaughn* index, he was unable to effectively challenge the DOJ's withholdings. *See e.g.*, Doc. 46; Doc. 73. Judge Smith found the DOJ's "efforts to avoid or forestall searching for responsive records . . . disconcerting, at best." Doc. 47, at 17.

Judge Smith ultimately denied the parties' cross-motions for summary judgment because of the incomplete record and set deadlines by which the parties were to renew their motions. Neither party did so. Nevertheless, after subsequent productions by the DOJ positioned the matter for resolution, Judge Smith found that, "[b]ecause the parties have already briefed their legal arguments[,] . . . all that is needed is the identification of which documents Plaintiff believes were wrongfully withheld and what portions of documents were improperly redacted." Doc. 72.

Mr. Sheppard provided the Court with his identification of improperly withheld documents and redactions, and the Court heard oral argument. *See* Doc. 99. All that remains is to address the issues raised in the parties' previously filed motions for summary judgment.[4] These issues are ripe, and further briefing is not necessary.[5]

---

[4] The Court will address Doc. 86, Mr. Sheppard's Motion for Attorney Fees and Sanctions, by separate order.

[5] Both parties agreed this case should be decided on summary judgment, and both parties filed briefing with their respective arguments. The record does not suggest either party had reason to expect additional summary judgment briefing after the date set by Judge Smith. Accordingly, both parties had sufficient notice that the Court would be considering the merits of this case under Rule 56. *Cf. Bendet v. Sandoz Pharm. Corp.*, 308 F.3d 907, 912 (8th Cir. 2002); *see also Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990) ("[A] federal district court may grant summary judgment, pursuant to [Rule] 56, *sua sponte*, provided that the party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.").

### III.    Legal Standard

#### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure applies to FOIA cases.  *Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993).  A defendant agency seeking summary judgment in a FOIA case must demonstrate that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located has been produced to the plaintiff or is exempt from disclosure.  *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985).  "The underlying facts, and the inferences to be drawn from them, are to be construed in the light most favorable to the FOIA requester."  *Pollack*, 879 F.2d at 409.

#### B.  Freedom of Information Act (FOIA)

FOIA entitles interested parties to request records from government agencies and empowers federal courts to order that any record improperly withheld must be produced.  *See* 5 U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo."  *Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  There is a "strong presumption in favor of disclosure" under FOIA.  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

That said, Congress exempted nine categories of documents from FOIA's broad sweep.  5 U.S.C. § 552(b).  The statutory exemptions are to be "narrowly construed."  *Nat'l Ass'n of*

*Home Builders*, 309 F.3d at 32 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976));

*Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 694 (8th Cir. 2012).

## IV.    Disputed Documents

Mr. Sheppard identifies specific documents that he alleges the DOJ improperly redacted

or withheld.  *See* Doc. 88.  Mr. Sheppard groups these documents into three categories: (1) the

Final Memorandum – *Vaughn* Index Documents ("VID")[6] 69 and 121; (2) Memoranda of

Investigation ("MOI") – VID 9–14, 17, 23–38, 42–51, 58–61, 63, 65–68, 131–160,[7] and 549; and

(3) Documents Created After the Final Memorandum was Submitted – VID 128–131, 521, and

527.  Doc. 88, at 2–3.[8]

### A.  Final Memorandum and Memoranda of Investigation

Mr. Sheppard argues the Final Memorandum and MOIs should be released in full.  The

DOJ claims three exemptions, 6, 7(C), and 7(D), to justify redacting these documents.[9]  The DOJ

released the Final Memorandum—listed at VID 69 and 121—in part with redactions for the

names and identifying information of third parties and agency employees, as well as most of the

---

[6] To avoid confusion, the Court uses "ECF" or "Doc" to identify documents filed on ECF and "VID" to identify documents listed in the *Vaughn* index.

[7] The Vaughn index skips from VID 158 to VID 160 and does not include a VID 159 because VID 159 "was duplicative" of VID 63.  Doc. 71-2, at 205.  The Vaughn index also skips from VID 148 to VID 150 and does not include a VID 149.  However, the Vaughn index does not contain an explanation for this inconsistency.  Doc. 71-2, at 197–98.

[8] Although the DOJ subsequently produced additional *Vaughn* indices, Mr. Sheppard identifies documents based on the August 14, 2020 *Vaughn* index.  Doc. 71-2.  To maintain consistency, the Court will do the same.

[9] While the *Vaughn* index lists Exemption 5 as a reason for redacting the Final Memorandum, the version that was most recently produced to Sheppard does not contain information redacted pursuant to Exemption 5.  Moreover, during oral argument the DOJ affirmed that it was not claiming that Exemption 5 applied to the Final Memorandum.  Doc. 99.  Accordingly, the Court will not address whether Exemption 5 applies.

content of the interviews. The MOIs were either redacted or withheld entirely, depending on the interviewee. Because the Review Team utilized the MOIs to write the Final Memorandum, and relies upon the same exemptions to withhold them, the Court generally addresses the Final Memorandum and MOIs together.

### 1. The MOIs Generally

The MOIs can be grouped into three categories.[10] First, are the MOIs that discuss third parties interviewed about their experience with the arson case, but who were not themselves implicated ("Third-Party MOIs"); Third Party MOIs are contained in VID 9–14, 17, 23, 25, 28–29, 31–35, 37, 42–49, 142, and 157. *See* Doc. 71-2. Seven of the Third-Party MOI interviewees signed privacy waivers.[11] Those seven MOIs were released in part, with redactions pursuant to Exemption 6 and Exemption 7(C). Doc. 71-2, at 9. For the remaining Third-Party MOI interviewees without privacy waivers, the DOJ withheld the documents in full pursuant to Exemption 6 and Exemption 7(C). Twelve of the Third-Party MOI interviewees also spoke with the *Star* about their involvement with the investigation.[12]

Second, are nine MOIs that identify individuals accused, but ultimately not charged, in the underlying arson ("Accused MOIs"). Those MOIs are listed at VID 51, 140, 143A, 143B,

---

[10] For ease of reference, the Court will refer to all the MOI interviewees collectively as "MOI Interviewees."

[11] Seven people identified in the Final Memorandum and MOIs executed privacy waivers: Carrie Neighbors (VID 10, VID 48), Shannon Reimers (VID 12), Nadine Brown (VID 13), Pattie Smith (VID 25), Debra Cearley (VID 29), Mike DeMaggio (VID 43), Buster Hower (VID 45), and Larry Summers (VID 157). *See* Doc. 27-2, at 44-53. As a result, it appears no further productions are required because the minimal remaining redactions were applied to shield the identities of private citizens who were not involved in the investigation and agency personnel, but to the extent additional redactions inconsistent with this Order were applied, they should be removed. *See* U.S.C. § 552(b)(7)(C).

[12] Those MOIs are listed at VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142.

148, 150, 155A, 155B, and 549.  *See* Doc. 71-2.  None of these individuals executed privacy waivers, and the MOIs were all withheld.  None of these individuals spoke to the *Star*.

Finally, the Review Team interviewed DOJ attorneys and law enforcement agents associated with the underlying arson investigation.  MOIs reflecting these interviews ("Agency MOIs") are listed at VID 24, 26–27, 30, 36, 38, 50, 141, and 145.[13]  The DOJ withheld these documents in full pursuant to Exemptions 6 and 7(C).

### 2. **Exemptions 6 and 7(C)**

The Court will begin with Exemptions 6 and 7(C), as they are the Exemptions upon which the DOJ most heavily relies.  FOIA Exemptions 6 and 7(C) are meant to recognize that "individual privacy interests may justify limiting public disclosure of governmental information in certain contexts."  *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174–75 (1991)).  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "[B]ecause Exemption 7(C) permits withholding of [] records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly unwarranted*' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy

---

[13] The Vaughn index shows that VID 24 is an MOI of an interview of a retired Dept. of Labor, OIG, Special Agent.  Doc. 71-2, at 25.  VID 26-27, 30, 36, 38, 141, and 145 are MOIs of 2008 interviews of ATF Special Agents.  Doc. 71-2, at 26-27, 34, 36.  VID 50 is a memorialization of a December 2, 2009, interview with a DOJ witness.

9

than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citing *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 496 n.6 (1994)) (emphasis in original). Thus, even though the DOJ relied on Exemptions 6 and 7(C), the Court "need only consider whether [the DOJ] properly invoked Exemption 7(C)." *Id.*; *see also Roth v. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2011) (drawing the same conclusion).

To determine whether the DOJ properly invoked Exemption 7(C), the Court must first evaluate whether the withheld records were compiled for a law enforcement purpose. *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002). If they were, the Court must decide whether disclosing the records would reasonably result in an "unwarranted" invasion of privacy. *Hulstein*, 671 F.3d at 695. This requires that the records implicate a substantial, as opposed to a *de minimis*, privacy interest. *Id.* If a substantial privacy interest is identified, the Court must analyze any countervailing public interest in the withheld records. If the records implicate a substantial privacy interest and the public has an interest in their disclosure, the Court will weigh the competing interests to determine whether disclosure is appropriate.

### a. Law Enforcement Purposes

The Final Memorandum and all the related MOIs were compiled for law enforcement purposes. A record is compiled for law enforcement purposes when (1) "the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and" (2) "there is a rational nexus between the investigation and the agency's law enforcement duties." *Tax Analysts*, 294 F.3d at 78; *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 30, 32 (D.C. Cir. 1998)); *Bartko v. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018). The inquiry focuses "on how and under what circumstances the requested files were compiled," and "whether the files sought relate to anything that can fairly be

10

characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176 (D.C. Cir. 2002). A court "is 'more deferential' to the agency's claimed purpose for the particular records" when that agency's primary function is law enforcement. *Pub. Empls. For Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analysts*, 294 F.3d at 77).

(1) **The Enforcement of Federal Law**

Both the Final Memorandum and the MOIs were compiled in furtherance of the DOJ's law enforcement mission. The DOJ began its review "to avoid any appearance of partiality" in the original arson prosecutions and to determine "whether the allegations raised in the *Star* [were] supported by evidence." Doc. 102-1, at 89. While "[i]nternal agency investigations present special problems in the Exemption 7 context, for it is necessary to distinguish between those investigations conducted 'for a law enforcement purpose,' and those in which an agency, acting as the employer, simply supervises its own employees[,]" the DOJ's investigation was not initiated simply to supervise its employees. *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984). "[A]n agency's investigation of its own employees is for law enforcement purposes . . . if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, [or] acts which could, if proved, result in civil or criminal sanctions." *Id.* (quoting *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974).

The Review Team's investigation had a concrete law enforcement purpose. The Review Team focused on discrete allegations that "government representatives used coercive tactics . . . to fabricate inculpatory evidence or to dissuade witnesses from testifying about exculpatory evidence." Doc. 21-1, at 26. This moves the investigation, while internal, into the law enforcement realm. *See e.g.*, *Stern*, 737 F.2d at 90 (finding a law enforcement purpose where

11

"[t]he Attorney General directed the FBI to conduct an investigation to ascertain the causes of a possible cover-up of illegal activity by the FBI"); *Jefferson*, 284 F.3d at 177 ("Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees."); *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 948 (D.C. Cir. 1998) (finding the OPR investigation at issue "was conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official," and consequently was compiled for law enforcement purposes). At bottom, the investigation was targeted at identifying—and rectifying—potential violations of the law.[14]

### (2) Nexus

After proving a law enforcement purpose, the DOJ must show that there is a rational nexus between the investigation at issue and the agency's law enforcement duties. *Blackwell*, 646 F.3d at 40; *Bartko*, 898 F.3d at 64. The DOJ argues that the purpose of the investigation was to evaluate the "veracity of the *Star*'s allegations concerning prosecutorial misconduct" and thus "readily meets" the nexus requirement. *See* Doc. 22, at 9. Mr. Sheppard counters that, because the review was "never intended to be a re-investigation of the arson, and because no criminal charges were contemplated[,]" there is no nexus between the review and the DOJ's law enforcement mandate. Doc. 27-1, at 32. True, DOJ never intended to re-investigate the arson, but that is not the end of the Court's analysis. Law enforcement, as used in Exemption 7, "refers to the act of enforcing the law, both civil and criminal." *Pub. Empls. For Envtl. Resp.*, 740 F.3d

---

[14] Sheppard relies on *Casa de Md. v. Dep't of Homeland Sec.*, to suggest the DOJ's investigation did not serve a law enforcement purpose. 409 Fed. Appx. 697 (4th Cir. 2011). However, there, the Fourth Circuit seems to have assumed the law enforcement threshold inquiry had been satisfied. *Id.* at *3. Accordingly, the case is not persuasive.

at 203 (holding that law enforcement entails more than just investigating individuals following crimes). Although any perpetrators of the underlying arson were never directly within the scope of the review, the review was intended to address potential prosecutorial or investigator misconduct stemming from the arson prosecution. If the *Star's* allegations had been confirmed, criminal and/or civil liability could have followed.

What's more, the DOJ's mandate includes "ensur[ing] fair and impartial administration of justice for all Americans." *See* Dep't of Justice, *About DOJ*, https://www.justice.gov/about. Had the DOJ uncovered wrongdoing, its mandate would have included ensuring justice was done for anyone wrongfully convicted because of the misconduct. Accordingly, there is a sufficient nexus between the purposes of the DOJ's review and the DOJ's overall law enforcement mission.

Because the investigation, and the associated records, were compiled in the furtherance of the enforcement of federal law, and because there is a nexus between the investigation and DOJ's law enforcement mandate, the records had a law enforcement purpose.

### b. Exemption 7(C)'s "Unwarranted" Invasion of Privacy

Exemption 7(C) only protects against the disclosure of law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *Hulstein*, 671 F.3d at 695. The privacy analysis "requires that we first determine whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest,' because '[i]f no significant privacy interest is implicated, . . . FOIA demands disclosure." *Multi Ag Media, LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner ("NARFE")*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "A substantial privacy interest is anything greater than a *de minimis* privacy

Case 4:17-cv-01037-NKL   Document 104   Filed 09/21/21   Page 13 of 43

interest." *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 970 (8th Cir. 2016).  Finding a substantial privacy interest does not conclude the inquiry; it simply allows the Court to balance individual privacy concerns against the public interest in disclosure.  *Id.*

Three groups' privacy interests are at stake here: (1) Third-Party MOI interviewees who discussed their experience with the underlying criminal trial; (2) Accused MOI interviewees; and (3) Agency MOI interviewees.  Within each group, two types of privacy interests are implicated; first, a privacy interest in any identifying information—including names, addresses, phone numbers, and any other information that could be traced to an individual; and second, a privacy interest in the substance of the information disclosed during the interviews.  *Am. Farm Bureau Fed'n*, 836 F.3d at 973–74 (distinguishing between privacy interests in identifying and non-identifying information); *Rose v. Dep't of Air Force*, 495 F.2d 261, 267 (2d Cir. 1974) (holding that the histories of individual cadets constitute identifying information because individuals familiar with the events could link the anonymous summaries to specific people).

### (1) Identifying Information

To begin, all three groups have a significant privacy interest in any identifying information.[15]  Indeed, the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants, are more than *de minimis*. *Schrecker v. Dep't' of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Multi Ag Media*, 515 F.3d at 1229-30.  Identification could lead to harassment and speculation, and there is "legitimate cause

---

[15] Mr. Sheppard does not ask the Court to order the DOJ to disclose the identities of any DOJ employees contained within the withheld or redacted records.  *See* Doc 88, at 2 n.2 ("[Mr. Sheppard] does not request that the redactions of names or other identifying information of agency employees be removed.").  Accordingly, the Court will not further address the privacy interests the DOJ Review Team members or Agency MOI interviewees have in their *identities*, because Mr. Sheppard does not seek that information.

Case 4:17-cv-01037-NKL   Document 104   Filed 09/21/21   Page 14 of 43

to conclude disclosure of the identity of any cooperating individuals could subject them to reprisal and have a chilling effect on future cooperation by them [or others] in this or other cases." Doc. 22, at 13–14. This interest is especially strong for the Accused MOI interviewees. *ACLU*, 655 F.3d at 7 ("Typically, the decision not to prosecute insulates individuals who have been investigated but not charged from th[e] rather significant intrusion into their lives" caused by public disclosure); *Nation Magazine*, 71 F.3d at 896 (holding that "disclosure of the *identities* of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy and is thus exempt") (emphasis in original).

      Mr. Sheppard states that many of the MOI Interviewees previously spoke with or were identified by the *Star*, testified in the *Sheppard* trial, or both. *See* Doc. 27-1, at 35; *see also Citizens for Resp. & Ethics in Washington v. Dep't of Justice*, 978 F.Supp.2d 1, 10 (D.D.C. 2013) (holding that a third party's privacy "interest in a fact already known to the public is substantially diminished," particularly when the third party "was the person responsible for disclosing" the information). While previous publicity is a relevant *balancing* factor to be addressed below, even MOI Interviewees publicly identified by the *Star* maintain more than a *de minimis* privacy interest in their names and explicit identifying information contained in government records. *Neely v. FBI*, 208 F.3d 461, 464–65 (4th Cir. 2000) (holding "third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests in the withheld information" regardless of whether "the identities of some or all of the individuals had been publicly disclosed or were publicly available."); *Reporters Comm.*, 489 U.S. at 763 (rejecting the argument that the public availability of information *necessarily* renders nonexistent the privacy interest in that information protected by Exemption 7(C)) (emphasis in original).

15

Case 4:17-cv-01037-NKL   Document 104   Filed 09/21/21   Page 15 of 43

(2) **Substance of Interviews**

The substance of the information disclosed during the interviews, however, presents a different question, and—except for the Accused MOI interviewees—any privacy interests implicated are significantly weaker. The *substance* of the interviews reflected in the Third-Party and Agency MOIs, after redactions are applied to protect identifying information, does not appear to permit a reader to identify any individual interviewee. As such, the interviewees' interest in protecting the *substance* of any interview is *de minimis*. *See, e.g.*, *Citizens for Resp. & Ethics*, 978 F.Supp.2d at 10 (holding that third parties lacked "a privacy interest in the *substance* of the files" where their identities had not been previously disclosed, and the substance would not reveal their identities) (emphasis in original). The Third-Party and Agency MOIs focus on the five defendants who were convicted of the arson and the DOJ personnel who originally worked on the case. With any identifying personal information redacted, the MOIs do not permit the public to identify, harass, or speculate about the individual interviewees or others referenced by the interviewees. *Neely*, 208 F.3d at 464–65 (recognizing the substantial privacy interests of third parties in the nondisclosure of their identities and connection with investigations). This is true even for Agency MOI interviewees. The Agency MOIs, stripped of identifying information, do not appear to contain any unique details that would reveal any individual DOJ employee, law enforcement tactics or strategy in general, or any other protectable privacy interest.

That said, the substance of the Accused MOIs does implicate substantial privacy interests because the interviewees' responses contain details that can be used to identify the individual interviewees. *Rose*, 495 F.2d at 267 (holding that the histories of individual cadets contained in agency records constituted identifying information because individuals familiar with the events

16

could link the anonymous summaries to specific people). Therefore, the privacy interest is more than *de minimis*.

Accordingly, all interviewees maintain a substantial privacy interest in their identities. Accused MOI interviewees also have a substantial privacy interest in the *substance* of their interviews, because their interviews clearly reflect unique details, beyond the interviewee's personal information, that would permit identification.

The Court must now determine whether the public has a countervailing interest in the disclosure of the identities of the Third-Party and Accused MOI interviewees and the substance of the Accused MOIs. As discussed above, because Third-Party and Agency MOI interviewees do not have a privacy interest in the substance of their interviews, the Court need not consider the public's countervailing interest; Exemption 7(C) simply does not exempt these records from disclosure.[16]

### c. Public Interest in Disclosure

Once a legitimate privacy interest is implicated, the burden shifts to Mr. Sheppard to (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "[T]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Nat. Desert Ass'n.*,

---

[16] Just because the Third-Party and Accused MOI interviewees lack a privacy interest in the substance of their interviews does not mean that no redactions need to be made. Nothing here should be read to foreclose any other redactions required by this Order, including redactions required by Section V below.

17

519 U.S. 355, 355–56 (1997) (alternation and internal quotation marks omitted).  Accordingly, the Court must determine whether there is a public interest in the identities of the Third-Party and Accused MOI interviewees and the substance of the Accused MOI interviewees, as they are the categories of information sought by Mr. Sheppard for which the interviewees have a privacy interest.[17]  It is Mr. Sheppard's obligation to identify the public's interest in the specific information over which a privacy interest is claimed.

There is a clear public interest in the substance of the investigation—reflected in the substance of the Accused MOIs—given the implication of government misconduct.  *See* Doc. 27-1, at 33 (Mr. Sheppard identifying the public's interest in government improprieties); Doc. 99 (the DOJ acknowledging the public interest in the investigation); s*ee also ACLU*, 655 F.3d at 12 (suggesting "widespread media attention" is indicative of public interest); *Reporters Comm.*, 489 U.S. at 766 n.18 (explaining that "matters of substantive law enforcement policy . . . are properly the subject of public concern.").  To successfully invoke the public's interest in government impropriety, Mr. Sheppard must assert "more than a bare suspicion" of official misconduct, and "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 173–74.  Mr. Sheppard has done so.  The *Star* reported that witnesses came forward after Mr. Sheppard's trial alleging misconduct, including that several government witnesses lied at trial and that the government used coercive investigative tactics and suppressed evidence.  That these allegations were investigated and reported by a Pulitzer-prize winning journalist working at a reputable news outlet pushes the allegations beyond "just a bare suspicion" of official misconduct.  *See Roth*,

---

[17] Again, because Mr. Sheppard does not seek the identity of any DOJ personnel, the Court does not address that information.  *See* Doc. 88, p. 2 n.2.

642 F.3d at 1180 (reasoning that sworn allegations of misconduct justified more than a bare suspicion). Accordingly, Sheppard has met his burden of showing a *general* public interest in the investigation. *Favish*, 541 U.S. at 173–74; *Roth*, 642 F.3d at 1180.

Whether the public's interest stretches to the identity of any *individual interviewee*, or any third party referenced by them, is a closer question. Because the public has an inherent interest in discovering "what the Government is up to[,]" the public's interest reasonably encompasses the identities of those with whom the Review Team spoke to conduct its review. *Bibles*, 519 U.S. at 355–56. As such, the public has an interest in the identities of both the Third-Party and Accused MOI interviewees. That said, the public does not have an interest in the identities of any individual referenced in the Third-Party and Accused MOIs that were not related to the underlying arson investigation.

### d. Balancing Privacy Interests and Public Interest in Disclosure

Having established that substantial privacy interests are implicated by some of the withheld information, and that the public has a substantial competing interest in that information, the Court must now balance those interests. *Favish*, 541 U.S. at 741. This review is de novo, and the DOJ has the burden to sustain its decisions to withhold and redact information. *Reporters Comm.*, 489 U.S. at 755 (citing 5 U.S.C. § 552(a)(4)(B)). The Court will address the following privacy interests that conflict with the public's interest in the withheld records: (1) The identities of Third-Party MOI interviewees who spoke with the *Star*, (2) the identities of Third-Party MOI interviewees who did not speak with the *Star*, (3) the identities of the Accused MOI interviewees; and (4) the substance of the Accused MOIs. The Court will not discuss the strength of any public interest in the substance of the Third-Party MOIs because, as discussed above, there is no countervailing privacy interest once the identifying information is removed.

19

Nor will the Court weigh any public or privacy interests related to the Agency MOIs. Mr. Sheppard does not request the identities of any DOJ personnel, and there are no substantial privacy interests in the substance of the interviews once identifying information is redacted.

(1) **Third-Party Interviewees Who Spoke with the Star: VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142**

To begin, several Third-Party MOI interviewees provided information to the *Star* and were publicly named as a result.[18] The privacy interests of these interviewees must yield to the public's interest in understanding the Review Team's investigation and ultimate conclusions. As an initial matter, the privacy interests of the Third-Party interviewees who spoke to the *Star* are undermined by the fact that their identities are "readily available to the public[,] [which] reduces . . . the incursion on privacy resulting from disclosure." *ACLU*, 655 F.3d at 9. What's more, the Final Memorandum and MOIs do not implicate large amounts of additional private information, such as addresses, telephone numbers, financial status or other personal information that courts have held to be generally protectable. *See Reporters Comm.*, 489 U.S. at 780 (holding that release of the contents of a "rap sheet" which may include a record of the subject's convictions, constituted an unwarranted invasion of personal privacy under Exemption 7(C)"). If the interviewees statements to government officials are consistent with their public statements to the *Star*, little, if any, privacy is surrendered. *Citizens for Resp. & Ethics*, 978 F.Supp.2d at 10 (holding that a third party's "interest in a fact already known to the public is substantially diminished," particularly when the third party "was the person responsible for disclosing" the information). If the Third-Party MOIs contradict the interviewees public statements, the public has a stronger interest in learning how the DOJ review was impacted.

---

[18] None of these individuals signed a privacy waiver.

At bottom, once the *Star*'s allegations were publicized and the government responded by launching an investigation, the public had a strong interest in understanding that investigation and its outcome. *Rose*, 425 U.S. at 372 (holding that "the basic purpose of the Freedom of Information Act [is] 'to open agency action to the light of public scrutiny.'"). The fact that these interviewees have already made public statements is enough to pierce the well-established protection enjoyed by individuals mentioned in law enforcement records.[19]

Because the Court finds that the public interest in understanding the internal review outweighs any privacy interests of people who spoke publicly with the *Star*, the DOJ must produce VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 to Mr. Sheppard with the names of the interviewees unredacted. Redactions can be left in place to protect any additional personal information of the interviewees. Redactions consistent with Part V below should also be applied.

(2) **Third-Party Interviewees Who Did Not Speak with the Star: VID 28, 32, 33, 34, and 37**

Next, are the Third-Party MOI interviewees who did not speak with the *Sta*r, but were interviewed by the DOJ. These MOIs were withheld in full and were not mentioned in the Final Memorandum. These MOIs must be redacted to protect the identities of the individual interviewees, but the substance of the MOIs should be produced after redactions are made to remove any information explicitly identifying the interviewees in this cateogry. Since these individuals did not speak with the *Star*, they have a greater privacy interest in their identities. *Cf.*

---

[19] MOI 17 reflects the interview of an individual who spoke to the *Star*, but requested anonymity. The request for anonymity strengthens this interviewee's privacy interest in his/her identity. While the public does have an interest in assessing the veracity of this interviewee's statements and the role the interview played in the DOJ review, that interest is defeated by the interviewee's substantial privacy interests. Accordingly, the redactions made in MOI 17 to protect the interviewee's identity were proper. The production of VID 17 is also subject to the protections explained below in Part V.

*Citizens for Resp. & Ethics*, 978 F. Supp. 2d at 10 (holding that where a third party publicly discloses information, their privacy interest in that information is substantially diminished). And, because these individuals did not make public statements, there is no way for the public to compare versions and assess the interviewees' reliability. This also substantially reduces the public's interest in the interviewees' identities. Here, the public interest does not outweigh the interviewees' privacy interests in their names and identifying information. *Lahr*, 569 F.3d at 975–79 (withholding eyewitnesses' names where the substance of the eyewitness reports had already been produced).

That said, the DOJ has not explained at all—let alone with the necessary particularity— why the *substance* of these interviews is not segregable from the names of the interviewees. "An agency may not automatically withhold an entire document when some information is exempt, but rather must provide any reasonably segregable portion . . . unless [the segregable portions] are 'inextricably intertwined' with exempt portions." *Madel v. Dep't of Justice*, 784 F.3d 448, 453 (8th Cir. 2015); 5 U.S.C. § 552(b). To the extent these MOIs discuss agency personnel, individuals unrelated to the underlying arson investigation, or protected individuals discussed in this Order, their names and any other explicitly identifying information can be redacted. But the remaining non-exempt content must still be produced. The DOJ will reproduce these MOIs with redactions to remove the names and identifying information of the interviewees themselves, agency personnel, and anyone else who did not speak with the *Star* or who did so but requested confidentiality. *Cf. Barouch v. Dep't of Justice*, 962 F.Supp. 30, 61 (D.C. Cir. 2013) (finding the government appropriately segregated "names" and "other identifying information of third parties" and thus "met its burden to release all reasonably segregable material"). Finally, the production of VID 28, 32, 33, 34, and 37 is subject to the protections explained below in Part V.

### (3) **Accused MOIs: VID 51, 140, 143A, 143B, 148, 150, 155A, 155B, and 549**

The Accused MOIs are listed at VID 51, 140, 143A, 143B, 148, 150, 155A, 155B and 549.  For the following reasons, the Accused MOIs, other than MOI 549, must be produced without redaction to protect the names of the interviewees or other individuals accused, but not charged, in the underlying arson.

As discussed above, the Accused MOI interviewees have a substantial privacy interest in both their identities and the substance of the MOIs, because the substance of the interviews necessarily identifies individuals accused, but not charged, in the underlying arson.  *Nation Magazine*, 71 F.3d at 896.  However, this privacy interest is diminished because public reporting has already linked these individuals to the underlying arson investigation.  *Neely*, 208 F.3d at 464-65.  Therefore, the weakened privacy interests—while still substantial—are ultimately defeated by the public's interest in the DOJ's review of the allegations of government misconduct.  The public has a substantial interest in both the way the DOJ conducted its investigation and its conclusion regarding the *Star's* allegations, and that interest stretches to the DOJ's interactions with the individuals implicated by the *Star* in the underlying arson.  *Reporters Comm.*, 489 U.S. at 766 n.18 (explaining that "matters of substantive law enforcement policy . . . are properly the subject of public concern.").  This is especially true considering publicly reported allegations of government misconduct in the underlying arson prosecution.  *Favish*, 541 U.S. at 173–74; *Nation Magazine*, 71 F.3d at 896 (permitting disclosure of third-party information contained in law enforcement records if disclosure would confirm or refute allegations of illegal agency activity); *Roth*, 6422 F. 3d at 1183 (finding in favor of disclosure of FBI records containing third-party information because "it would further the public's interest in

23

revealing whether the FBI is withholding information that could corroborate the claim of innocence of a man whom it helped put on death row.").

Therefore, the DOJ's Exemption 7(C) claims fail with respect to VID 51, 140, 143A, 143B, 148, 150, 155A, 155B, 549.  Redactions should be applied to protect any personal information beyond the names of the individuals accused, but not charged, in the underlying arson, such as phone numbers, addresses, and social security numbers.  Further, redactions should be applied to the extent necessary to protect the identities of any DOJ personnel and any Third-Party MOI Interviewee who did not speak to the *Star*, or who did so but requested anonymity.  Finally, redactions should be applied consistent with Section V below.

While Exemption 7(C) fails to exempt VID 549, the DOJ also invoked Exemption 5, claiming work product protection, attorney client privilege, and the deliberative process privilege.  *See* Doc. 71-2 at 406–408.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]his exemption incorporates the privileges available to Government agencies in civil litigation.  That list includes the deliberative process privilege . . . and attorney work-product privilege."  *U.S. Fish and Wildlife Serv. v. Sierra Club*, 141 S.Ct. 777, 785 (2021) (citation omitted).  VID 549 was properly withheld in full under the deliberative process privilege.  Unlike other MOIs, VID 549 is not simply a summary of a witness interview.  Instead, it contains select information learned from an interviewee and the Review Team's interpretations of that information.  The document was prepared prior to the conclusion of the DOJ's review of the underlying arson investigation, and it was used to help the Review Team weigh information and reach a conclusion.  *Id.* (explaining that documents are

deliberative if they contain the thoughts and process prior to choosing a final agency policy or outcome).

(4) **Agency MOIs: VID 24, 26, 27, 30, 36, 38, 50, 141, and 145**

Because Mr. Sheppard does not seek the identity of any DOJ personnel, and because there is no privacy interest in the Agency MOIs once information identifying DOJ interviewees or investigators is removed, the Agency MOIs should be produced with redactions to protect the names of DOJ personnel, Third-Party interviewees who did not speak with the *Star* or who did so but requested confidentiality, and any other individual referenced but uninvolved with the underlying arson investigation. Finally, the DOJ's productions are also subject to the protections discussed below in Part V.

### B. MOI Emails

VID 58–61, 63, 65–68, 132–139, 144, 146–147, 151–154, 156, 158, and 160 are emails between DOJ personnel sent between June 2009 and March 2011 which discuss and attach various MOIs discussed above ("MOI Emails"). *See* Doc. 71-2, at 58–74, 184–86. The records reflecting the emails sent and received by DOJ personnel ("Cover Emails") were produced and redacted in part pursuant to Exemptions 6 and 7(C). The MOIs attached to the emails ("Attached MOIs") were either withheld in full or redacted in part, if privacy waivers were received, pursuant to Exemptions 6 and 7(C). Additionally, VID 59 and 63 were redacted in part due to Exemption 5, attorney work product and the deliberative process privilege. Mr. Sheppard argues the MOI Emails should be released in full. *See* Doc. 88, at 3.

25

1. **Exemptions 6 and 7(C)**

To begin, the Attached MOIs reflect the same interviews with the same interviewees as the MOIs that the Court previously discussed; accordingly, the Attached MOIs should be produced with the same level of redaction as the corresponding MOI discussed above.

However, the Cover Emails themselves, including any text in the body of the emails and in the to/from fields, require a separate analysis. *See supra*, Part IV.A.2.f. The names of the individual interviewees whose interviews are discussed in the various Attached MOIs are listed in the "Attachment" field of the Cover Emails. These names make up most of the redactions in the Cover Emails.[20] Some, but not all, of the names of the DOJ employees who sent and received the emails are also redacted. As discussed above, the names of Third-Party MOI interviewees who spoke with the *Star* and those accused, but not charged, in the underlying arson, are not protected. The DOJ must unredact those names. The public's interest outweighs these individuals' privacy interests, though only with regards to their names.

The names of Third-Party interviewees who did not speak with the *Star*, or who spoke with the *Star* but requested confidentiality, are protected by Exemption 7(C) because the "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Schrecker*, 349 F.3d at 666. This substantial privacy interest is not outweighed by the public interest in disclosure, as discussed above. *See supra*, Part IV.A.2.f. Accordingly, the DOJ properly redacted the names of Third-

---

[20] VID 137 includes additional redactions pursuant to Exemptions 6 and 7(C). Doc. 102-1, at 113. Based on the *in camera* review, this material includes identifying information about the third party interviewee, such as the interviewee's criminal history, and was properly withheld. *Reporters Comm.*, 489 U.S. at 780 (finding that individuals have a substantial privacy interest in their criminal histories).

26

Party MOI interviewees who spoke privately with the *Star*, Third-Party MOI interviewees who did not speak with the *Star*, and DOJ personnel from the Cover Emails.[21]  As explained, their identities are protected and should be redacted pursuant to Exemption 7(C).

　　　　2.　　**Exemption 5**

　　VID 59 and 63 are MOI Emails that were redacted in part due to Exemption 5, on account of attorney work product and the deliberative process privilege.  Attorney work product protection shields from disclosure "mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B); 5 U.S.C. § 552(b)(5).  The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sierra Club*, 141 S.Ct. at 785 (quoting *NLRB*, 421 U.S. at 150).  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  *Id.* (internal citations omitted); *State of Mo. ex rel. Shorr v. U.S. Army Corps of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998).

　　The *Vaughn* index states the Cover Email portion of VID 59 was withheld in full because it "contains a discussion regarding clarification of a matter within the MOI" and predates the Final Memorandum and does not "embody final agency action by the ultimate decision-maker."  Doc. 71-2, at 59–60.  Exemption 5 was not properly applied because the content of the Cover Email contains neither mental impressions, legal theories, nor clarification of a substantive matter predating the Final Memorandum.  *Sierra Club*, 141 S.Ct. at 785; Fed. R. Civ. P.

---

[21] Because Mr. Sheppard does not ask the Court to order the identities of any DOJ personnel disclosed, the Court assumes the propriety of the DOJ's decision to redact the names of some DOJ personnel.

27

26(b)(3)(B); 5 U.S.C. § 552(b)(5). The Cover Email states, "[p]lease review and we'll discuss when we talk this afternoon. I have one clarification question for you for something that I'd like to add to report." Neither the attorney work product nor deliberative process privilege apply to the Cover Email portion of VID 59.[22]

As to the Attached MOI portion of VID 59, the *Vaughn* index states the MOI was withheld in full pursuant to the deliberative process privilege because it predates completion of the Final Memorandum and contains "selected factual information weighed by the Criminal Division Review Team as they considered whether the allegations raised by the *Star* newspaper were supported by credible evidence." Doc. 71-2, at 59–60. This draft MOI required further input and clarification from agency personnel and does not constitute the DOJ's final product. *Sierra Club*, 141 S.Ct. at 786 ("What matters, then, is . . . whether [the document] communicates a policy on which the agency has settled" and "whether the agency treats the document as its final view on the matter"). Accordingly, the DOJ appropriately withheld the Attached MOI portion of VID 59.

VID 63 is a Cover Email that was produced in part pursuant to Exemption 5, due to attorney work product protection and the deliberative process privilege. *See* Doc. 71-2, at 65. As to the deliberative process privilege, the Vaughn index states VID 63 "reveals contemplated future investigative steps and selected factual information weighed by the Criminal Division Review Team" and "it is pre-decisional, inasmuch as it preceded and did not embody final agency action by the ultimate decision-maker." Doc. 71-2, at 65. The deliberative process privilege protects the second email within VID 63 from disclosure because it discusses the

---

[22] VID 59 and 160 are the same, but explanation indicating the duplication is not included in the Vaughn index. Doc. 71-2, at 59, 205. The DOJ did not claim Exemption 5 applied to the email portion of VID 160.

substance of a draft MOI before it was finalized.  *Sierra Club*, 141 S.Ct. at 785–86.  Since the

deliberative process privilege applies, the Court need not address arguments concerning work

product.  *Pinson v. Dep't of Justice*, 243 F.Supp.3d 74, 79 (D.D.C. 2017) (holding that where the

court concludes that certain exemptions were properly applied, the court does not reach the

arguments concerning other claimed exemptions).

 Finally, VID 58 (a Cover Email only) and 68 (containing both a Cover Email and

Attached MOI) also contain redactions pursuant to Exemption 5.  Although the *Vaughn* index

does not apply Exemption 5 in detail to VID 58 and 68, the DOJ properly applied Exemption 5

to VID 58 because the redacted material contains discussion by an agency employee about a

matter in a draft MOI, and whether to include certain information in the draft.  *Sierra Club*, 141

S.Ct. at 785–86 (explaining that documents are deliberative if they contain the thoughts and

process prior to choosing a final agency policy or outcome); *Mace v. EEOC*, 37 F.Supp.2d 1144,

1150 (E.D. Mo. 1999) (applying the deliberative process privilege to an inter-agency

communication because the document "contain[ed] the personal opinions of the writer rather

than the policy of the agency.").

 However, the DOJ improperly applied Exemption 5 to VID 68.  The redacted material

does not contain any substantive text about a decision the agency was contemplating, nor does it

include the agency employee's legal impression of any issue.  Accordingly, Exemption 5 does

not shield the redacted content in VID 68 from disclosure.  *Sierra Club*, 141 S.Ct. at 785–86;

Fed. R. Civ. P. 26(b)(3)(B); 5 U.S.C. § 552(b)(5).

 The Court grants the DOJ summary judgment as to the application of Exemption 5 to the

MOI portion of VID 59, the email content of VID 58, and the content of the second email

contained in VID 63; these redactions were proper.  The Court denies summary judgment as to

VID 68.  The redactions pursuant to Exemption 5 contained in VID 68 must be removed, and then VID 68 must be produced to Mr. Sheppard within sixty days of this order.[23]

### C.  Documents Created after the Final Memorandum was Submitted

The *Vaughn* index identifies VID 128–129 and 527 as email chains that postdate the release of the Final Memorandum.  *See* Doc. 71-2, at 177–79, 363.  VID 521 is an email from the date the Final Memorandum was submitted, and VID 130–131 include email chains from before the Final Memorandum was released, after the Final Memorandum was released, and one undated email.  *Id.* at 180–82, 362.  The emails were between agency personnel.  The author and recipient(s) names and subject matter titles of the emails are listed in the *Vaughn* index.  *See* Doc 71-2.  The DOJ claimed Exemptions 5, 6, and 7(C) shield these documents from disclosure.  Mr. Sheppard argues VID 128–131, 521, and 527 should be released in full.  *See* Doc. 88, at 3.

### 1.  Exemption 5

The DOJ claims Exemption 5 attorney work product and deliberative process privilege apply to the emails.  The DOJ argues that "[f]ailure to provide the protection of the deliberative process privilege in this context is contrary to public policy because it would totally discourage agencies from undertaking the same kind of good-faith, non-compell[ed], self-imposed reviews in the future.  Disclosure would inhibit the open, frank, internal agency discussion the deliberative process privilege is intended to protect."  Doc. 31, at 9.

As to VID 128, the content of the first email states, "[t]his message has been archived" and contains no additional text.  The content of the second email contains only a fragment of a sentence.  This fragment standing alone is not intelligible to an outside reader.  Nonetheless, the

---

[23] Again, the Court has set the 60-day deadline for production in recognition of the logistical challenges imposed by the ongoing Covid-19 Pandemic.

fragment contains internal communication between agency personnel that did not constitute final agency policy and the agency need not produce the unintelligible remains of the document. The DOJ properly invoked Exemption 5. *Sierra Club*, 141 S.Ct. at 785.

As to VID 129–131,[24] 521,[25] and 527, even though some of the emails post-date the Final Memorandum, the emails contain communication about how to disseminate the results of the internal review, which constitute pre-decisional discussions. Agency personnel discussing how to publish a document and weighing options for publication does not constitute a final decision. Within the emails, the DOJ had not settled on a course of action, and the agency personnel did not treat the communication as a final view on the matter. *Sierra Club*, 141 S.Ct. at 786 ("What matters, then, is…whether [the document] communicates a policy on which the agency has settled" and "whether the agency treats the document as its final view on the matter"). Accordingly, the emails were properly withheld in full pursuant to Exemption 5 deliberative process privilege. *Shorr*, 147 F.3d at 710 (holding that the deliberative process privilege applies where disclosure would expose the workings of the decision-making process in a way that would discourage candid discussion and undermine the agency's ability to perform its functions); *National Wildlife*, 861 F.2d at 1121 ("Recommendations on how to best deal with a particular issue are themselves the essence of the deliberative process.").

---

[24] There are two documents listed at VID 131. Relevant here is the first VID 131, which post-dates the Final Memorandum.

[25] For VID 521, the Vaughn index does not provide the subject matter line, which reads: "KC Star recusal matter," and the Vaughn index does not state that the email is accompanied by seven Third-Party MOI attachments. Doc. 96-1, at 238–50. Because the email portion of VID 521 does not contain any text, there is no information to be either withheld or disclosed. Because, after redactions to protect DOJ personnel, no intelligible information remains, DOJ need not produce this document. *Cause of Action Inst. v. U.S. Dep't of Com.*, 513 F. Supp. 3d 116, 132 (D.D.C. 2021) (citation omitted).

31

Because withholding VID 129–131, 521, and 527 is appropriate under Exemption 5, the Court need not discuss Exemption 7(C). *Pinson*, 243 F.Supp.3d at 79. Accordingly, the Court grants summary judgment as to the application of Exemption 5 to these disputed emails. No further productions of these documents is warranted.

## V.     Protections that Apply to All Disclosures

When making the productions ordered herein, the DOJ must ensure the following content is protected via redaction. First, the MOIs contained in VID 32, 141, and 145 contain information about a potential confidential informant. Pursuant to Exemption 7(D), information about confidential informants is protected and the DOJ must redact the names and identifying information of the confidential informants contained in VID 32, 141, and 145.[26] Second, the MOIs contained in VID 49 and 142 contain information about the interviewees' criminal histories. Criminal history information is protected, and the DOJ must redact this information prior to disclosure of VID 49 and 142. *Reporters Comm.*, 489 U.S. at 780 (finding that individuals have a substantial privacy interest in their criminal histories).

Finally, many of the interviewees refer to individuals who did not testify at trial, did not speak with the *Star* about the underlying arson investigation, and were not interviewed as part of the internal investigation ("Uninvolved Individual"). Many of these people are relatives or acquaintances of the five defendants, or other community members. Disclosing the names of Uninvolved Individuals may be stigmatizing and doing so does nothing to advance the public's

---

[26] Exemption (b)(7)(D) protects from disclosure: records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to disclose the identity of a confidential source . . . . 5 U.S.C. § 552(b)(7)(D); *Roth*, 642 F.3d at 1185-86 (withholding confidential informants' names pursuant to Exemption 7(D)); *Miller*, 872 F.Supp.2d at 26 (invoking Exemption 7(D) to shield the "identity of a confidential source").

understanding of the DOJ review.  Accordingly, the DOJ must redact the names and identifying information of any Unidentified Individual referenced in any of the records the Court orders produced.  *Schrecker*, 349 F.3d at 661; *Multi Ag Media*, 515 F.3d at 1229–30.

**VI.    Conclusion**

The Court grants in part and denies in part summary judgment for Mr. Sheppard and grants in part and denies in part summary judgment for the DOJ, as described herein.  The DOJ is ordered to produce the Final Memorandum, MOIs, and MOI Emails with only the redactions discussed above to Mr. Sheppard within thirty days of the date of this Order.

s/  Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 9/21/2021
Jefferson City, Missouri

33

| VID Number | Action |
|---|---|
| 9 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 10 | No further production required |
| 11 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 12 | No further production required |
| 13 | No further production required |
| 14 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 17 | VID 17 should be produced with redactions to protect the identities of the interviewee, DOJ personnel and investigators, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star. |
| 23 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |

| | |
|---|---|
| 24 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 25 | No further production required |
| 26 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 27 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 28 | VID 28, 33, 34, and 37 should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. Otherwise, the substance of the MOIs should be produced in their entirety. |
| 29 | No further production required |
| 30 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 31 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 32 | As VID 32 identifies a confidential informant, any information that explicitly identifies the informant must be redacted pursuant to Exemption 7(D). |

| | |
|---|---|
| 33 | VID 28, 33, 34, and 37 should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. Otherwise, the substance of the MOIs should be produced in their entirety. |
| 34 | VID 28, 33, 34, and 37 should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. Otherwise, the substance of the MOIs should be produced in their entirety. |
| 35 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 36 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 37 | VID 28, 33, 34, and 37 should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. Otherwise, the substance of the MOIs should be produced in their entirety. |
| 38 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 42 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 43 | No further production required |

| | |
|---|---|
| 44 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 45 | No further production required |
| 46 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 47 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety. |
| 48 | No further production required |
| 49 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke to the *Star*. Otherwise, the substance of these interviews should be produced in their entirety.<br><br>VID 49 also contains information related to the criminal history of the interviewee. This information should be redacted. |
| 50 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |

| | |
|---|---|
| 51 | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 58 | No further production required |
| 59 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. \n\n In addition, the DOJ may redact pages 2 and 3 of VID 59 because the draft MOI is covered by the deliberative process privilege. |
| 60 | VID 60 should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. |
| 61 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
| 63 | No further production required |
| 65 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
| 66 | VID 66 is a Cover Email with an Attached MOI. The Attached MOI should be redacted consistent with VID 17. Narrow redactions should be applied to the Cover Email to protect the names of the interviewee and DOJ personnel. |
| 67 | VID 67 is an email exchange attaching a version of the MOI listed at VID 50. The Attached MOI should be redacted consistent with VID 50. Narrow redactions should be applied to the Cover Email to protect the names of the interviewee and DOJ personnel. |

| 68 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
|---|---|
| 69 | The DOJ must produce the Final Memorandum with redactions consistent with the underlying MOIs upon which the memorandum is based. Specifically, redactions must be made to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star or who did so but requested anonymity. Any references to confidential informants were properly redacted. Any redaction applied to protect the identities of unindicted suspects in the underlying arson investigation must be removed. Any redactions applied to protect other identifying information, beyond the suspects' names, were proper. |
| 121 | The DOJ must produce the Final Memorandum with redactions consistent with the underlying MOIs upon which the memorandum is based. Specifically, redactions must be made to protect the identities of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star or who did so but requested anonymity. Any references to confidential informants were properly redacted. Any redaction applied to protect the identities of unindicted suspects in the underlying arson investigation must be removed. Any redactions applied to protect other identifying information, beyond the suspects' names, were proper. |
| 128 | No further production required |
| 129 | No further production required |
| 130 | No further production required |
| 131 | No further production required |
| 132 | No further production required |
| 133 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
| 134 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |

| 135 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
|---|---|
| 136 | VID 136 is an email referencing and attaching a version of VID 17. Accordingly, consistent with VID 17, the MOI and cover emails shall be produced with only narrow redactions to protect the names of the interviewee, DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star*, or who did so but requested anonymity. |
| 137 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
| 138 | VID 138 is an email attaching a draft of an MOI reflecting the interview of an Accused MOI interviewee. The draft MOI itself is not attached. Accordingly, the Cover Email should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. The interviewee's name, as reflected in the attachment title, must be unredacted. |
| 139 | VID 139 is an email attaching a draft of an MOI reflecting the interview of an Accused MOI interviewee. The draft MOI itself is not attached. Accordingly, the email should be produced with only narrow redactions to protect the identities of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. The interviewee's name, as reflected in the attachment title, must be unredacted. |
| 140 | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |

| 141 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity.<br><br>As VID 141 identifies a confidential informant, any information that explicitly identifies that informant was properly redacted under Exemption 7(D). |
|---|---|
| 142 | VID 9, 11, 14, 23, 31, 35, 42, 44, 46, 47, 49, and 142 should be produced with only narrow redactions to protect the names of interviewees and information explicitly identifying DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star*. Redactions should not be applied to protect the names of these interviewees—all of whom spoke to the *Star*—or any other interviewee who spoke with the *Star*. Otherwise, the substance of these interviews should be produced in their entirety.<br><br>VID 142 also contains information related to the criminal history of the interviewee. This information should be redacted. |
| 143A | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 143B | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 144 | VID 144 is an email attaching two draft MOIs, and a copy of one of those MOIs, VID 25. DOJ appropriately applied redactions to both the cover email and the draft MOI, and accordingly no further production is necessary. |
| 145 | VID 24, 26, 27, 30, 36, 38, 50, 141, and 145 should be produced with only narrow redactions to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the *Star* or who spoke with the *Star* and requested anonymity.<br><br>As VID 145 also identifies a confidential informant, any information that explicitly identifies the informant was properly redacted under Exemption 7(D). |

| 146 | VID 146 is a cover email and version of the MOI listed at VID 17. Accordingly, both the Attached MOI and the Cover Email should be produced with only redactions to protect the names of the interviewee, DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star. |
|---|---|
| 147 | VID 147 is a Cover Email attaching the MOI listed at VID 148. As the MOI reflects an interview with an Accused MOI interviewee, it should redacted only to protect the names of DOJ personnel, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star. |
| 148 | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 150 | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 151 | VID 151 is a cover email attaching two MOIs, and includes a draft of the MOI listed at VID 50. The identity of the second MOI interviewee—one of the accused MOI interviewees—is visible in the cover email. Accordingly, narrow redactions should be applied to protect DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to the Accused MOI interviewees, other than their names. |
| 152 | VID 152 is a cover letter attaching an MOI reflecting an interview with DOJ personnel. Accordingly, both the cover email and draft MOI shall be produced with narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to Accused MOI interviewees, other than their names.

The DOJ may apply redactions to protect the identity of any confidential informants not falling into any of the previous categories. |
| 153 | VID 153 is an email attaching a draft of an MOI listed at 155A and/or 155B. The draft MOI is not attached. Accordingly, narrow redactions shall be applied to protect the names of DOJ personnel. The attachment title, reflecting the name of the interviewee, shall be unredacted. |

| 154 | VID 154 is an email attaching a draft of an MOI listed at 155A and/or 155B. The draft MOI is not attached. Accordingly, narrow redactions shall be applied to protect the names of DOJ personnel. The attachment title, reflecting the name of the interviewee, shall be unredacted. |
|---|---|
| 155A | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 155B | VID 51, 140, 143A, 143B, 148, 150, 155A, and 155B should be produced with only narrow redactions to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who spoke with the *Star* and requested anonymity. The DOJ may redact any personal information pertaining to those accused, but not convicted, of the underlying arson, other than their names. |
| 156 | No further production required |
| 157 | No further production required |
| 158 | VID 158 is a cover email and the attached draft of the MOI listed at VID 148. As the MOI reflects an interview with an Accused MOI interviewee, it should be redacted only to protect the identities of DOJ personnel and investigators, third parties completely uninvolved with the underlying arson investigation, and third parties interviewed as part of the DOJ review who did not speak with the Star. |
| 160 | The DOJ must produce VID 59, 61, 65, 68, 133, 134, 135, 137, and 160 with the names of Third-Party MOI interviewees who spoke publicly with the *Star* in unredacted form. The DOJ must unredact any reference to an Accused MOI interviewee. Narrow redactions should be made or maintained to protect the names of DOJ personnel, individuals completely uninvolved with the underlying arson investigation, and Third-Party MOI interviewees who did not speak with the *Star* or who did so but requested anonymity. |
| 521 | No further production required |
| 527 | No further production required |
| 549 | VID 549 should be withheld in its entirety pursuant to Exemption 5. The deliberative process privilege applies. |