IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

|  |  |  |
|---|---|---|
| BRYAN E. SHEPPARD, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:17-cv-1037-NKL |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**ORDER**

Before the Court is Plaintiff Bryan Sheppard's Motion for Attorney's Fees, Costs, and Sanctions ("Fee Petition"). *See* Doc. 86. The Department of Justice ("DOJ") opposes the motion. After reviewing the Parties' briefing and the record, the Court GRANTS in part and DENIES in part the Fee Petition. Mr. Sheppard is eligible for and entitled to attorney's fees and litigation costs under the Freedom of Information Act ("FOIA"), and he shall therefore file a calculation of his reasonable attorney's fees with substantiating documents within fourteen days. However, because Mr. Sheppard is entitled to fees under FOIA, the Court DENIES Mr. Sheppard's request for sanctions as moot.

**I.    Background**

In this FOIA case, Mr. Sheppard sought records relating to the DOJ's investigation into allegations of government impropriety in the prosecution of five defendants for a 1988 arson in Kansas City, Missouri. *See* Doc. 1. Mr. Sheppard claimed that the DOJ violated FOIA by failing to: conduct an adequate search, produce all responsive documents, appropriately justify its claimed exemptions, and narrowly redact and withhold records. *Id.* After years of litigation,

1

and multiple orders from this Court, the DOJ finally certified that it had searched for and processed all responsive documents. *See* Doc. 84. After Mr. Sheppard identified the documents he believed were improperly withheld, the Court addressed the propriety of the DOJ's claimed FOIA exemptions on summary judgment. *See* Doc. 72; Doc. 88; Doc. 104. The Court ultimately granted in part and denied in part Mr. Sheppard's Motion for Summary Judgment. *See* Doc. 104.

Before granting summary judgment, the Court also granted Mr. Sheppard leave to file the Fee Petition. *See* Doc. 76. While the parties disputed whether the Court could address the Fee Petition before resolving the merits of Mr. Sheppard's FOIA claims, the Court has now resolved the FOIA claims, and as such, the Fee Petition undisputedly is ripe.

## II. Attorney's Fees

The test for whether a FOIA claimant may recover fees "has two components: eligibility and entitlement." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985); *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 61 (D.D.C. 2019) (citation omitted)). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original); *see also Miller*, 779 F.2d at 1389.

### A. Eligibility

Mr. Sheppard has substantially prevailed, and is therefore *eligible* to recover attorney's fees, if he obtained relief through either a judicial order, an enforceable written agreement or consent decree, or "[a] voluntary or unilateral change in position by the agency, if [his] claim is

2

not insubstantial." 5 U.S.C. § 552(a)(4)(E)(i)–(ii). Mr. Sheppard argues that he has substantially prevailed because he obtained relief "through both judicial orders and a voluntary change in position" by the DOJ. *See* Doc. 87, at 2. Because there are numerous orders from this Court that would satisfy the eligibility analysis —up to and including the Court's most recent Order holding the DOJ improperly withheld documents—the Court need not address Mr. Sheppard's claim that the DOJ changed its position.

To substantially prevail on account of a judicial order, the order must cause a "judicially sanctioned change in the legal relationship between the parties." *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) (citation omitted). This can include any order addressing "any significant issue in [the] litigation [that] achieves some of the benefit [the plaintiff] sought in bringing the suit." *Edmonds v. F.B.I.*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). "Once an order has been adopted by the court, requiring the agency to release documents, the legal relationship between the parties changes." *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 197 (D.C. Cir. 2007). This is true even if the order only requires partial disclosure. *See Am. Oversight*, 375 F. Supp. 3d at 62; *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 67 (D.D.C. 2013) (highlighting that a FOIA requester can still be eligible for fees even after a partial litigation victory) (citing *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 371 (D.C. Cir. 2006). Even an order requiring an agency to produce records by a certain date can qualify. *Am. Oversight*, 375 F. Supp. 3d at 62; *see also Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 820 F.Supp.2d 39, 44 (D.D.C. 2011)).

After obtaining relief through multiple orders, Mr. Sheppard has substantially prevailed. This Court—several times—ordered the DOJ to conduct additional searches to locate and

3

produce records responsive to Mr. Sheppard's FOIA requests. *See* Doc. 37, at 12–18, 19–25; Doc. 47; Doc. 59; Doc. 76; Doc. 83. These Court-ordered searches resulted in the DOJ locating thousands of pages of additional records responsive to Mr. Sheppard's FOIA request. On multiple occasions, the Court also ordered the DOJ to produce, or amend, declarations explaining the DOJ's search efforts, and *Vaughn* indices to justify the DOJ's decisions to withhold documents. *See e.g.*, Doc. 47; Doc. 74; Doc. 83; Doc. 100. These orders led the DOJ to remove certain redactions and produce additional records. In many of its orders, the Court also set deadlines by which the DOJ had to produce documents. *See e.g.*, Doc. 37 (ordering documents produced within fourteen days of the Court's order); Doc. 47 (ordering the DOJ to produce all responsive documents and an amended *Vaughn* index by no later than April 20, 2020). Any of these orders would make Mr. Sheppard eligible for attorney's fees and litigation costs under FOIA. *See Am. Oversight*, 375 F. Supp. 3d at 62 (finding a party substantially prevails when a court orders an agency to produce records by a certain deadline because "[s]ubsequent production 'could no longer be described as a voluntary change' in the agency's conduct—and the order thus constitutes a 'judicially sanctioned change in the legal relationship between the parties.'") (quoting *Davy v. C.I.A.*, 456 F.3d 166 (D.C. Cir. 2006)).

In any event, the Court also granted most of Mr. Sheppard's requested substantive relief when it partially granted summary judgment. The Court held that the DOJ was not justified in withholding many responsive records, and ordered the DOJ to produce those records with no or substantially fewer redactions. Doc. 104; *see also Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d at 67 (highlighting that a FOIA requester can still be eligible for fees even after a partial litigation victory) (citing *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 371 (D.C. Cir. 2006)). There is no suggestion that the DOJ would have produced these documents without a Court

4

order, and therefore, the Order constitutes a "judicially sanctioned change in the legal relationship of the parties." *See Piper v. U.S. Dep't of Justice,* 339 F.Supp.2d 13, 20 (D.D.C. 2004) (holding an order partially granting plaintiff's motion for summary judgment in a FOIA case made the plaintiff eligible for attorney's fees, even when only a relatively small number of documents were ordered produced)

Since multiple orders from this Court have resulted in a "judicially sanctioned change in the legal relationship between the parties," Mr. Sheppard has substantially succeeded, and he is eligible to recover attorney's fees. *See Davy*, 456 F.3d at 166 (citation omitted).

### B. Entitlement

After determining that Mr. Sheppard is eligible for fees, the Court "must still decide whether [he] is entitled [to them]." *Miller*, 779 F.2d at 1389; *Am. Oversight*, 375 F. Supp. 3d at 64–65. Whether a FOIA requestor is entitled to attorney's fees ultimately "rests within the sound discretion of the trial court[,]" after analysis of "all relevant factors." *Miller*, 779 F.2d at 1389 (citing *LaSalle Extension University v. FTC*, 627 F.2d 481, 485 (D.C. Cir. 1980)). Among these factors are the: (1) benefit to the public to be derived from the case, (2) commercial benefit to the plaintiff (3) nature of the plaintiff's interest in the records, and (4) whether the agency's withholding had a reasonable basis in law. *Id.*

#### 1. Public Benefit

To begin, the benefit to the public stemming from this case is substantial. *See Miller*, 779 F.2d at 1389 ("Probably the most important consideration in determining entitlement to fees in a FOIA case is the benefit to the public which is to be derived from release of the information sought."). The Court has already analyzed the public's interests in this case—public scrutiny of agency action and rooting out government misconduct—and found them to be substantial. *See*

*generally* Doc. 104 (describing the public interest in the withheld records and finding it to outweigh certain privacy interests claimed by the DOJ). Similarly, in the fees context, courts have held that cases brought to facilitate public understanding of agency action are inherently beneficial to the public. *See, e.g.*, *Piper*, 339 F.Supp.2d at 20-21 ("Disclosure of [the] information will assist the citizenry in making informed judgment and opinions about the FBI and how it is operating."); *Am. Small Bus. League v. U.S. Small Bus. Admin.*, No. 08–00829 2009 WL 1011632, at *2 (N.D. Cal. Aug. 15, 2009) (holding that there is public benefit in "holding a government agency publicly accountable for the accuracy of its statements and ensuring the agency's compliance with its Congressional mandate[.]"). This is particularly true when the case is brought to "air[] out possible evidence of Government misconduct relating to evidence tampering in a criminal trial." *Piper*, 339 F.Supp.2d at 20–21. The DOJ, including the various U.S. Attorney's Offices and the DOJ's law enforcement components such as the ATF, are "vital part[s] of this Nation's law enforcement structure . . . . Allegations and evidence of possible misconduct by [the DOJ] is relevant to the public's information fund. Disclosure of this information will assist the citizenry in making informed judgments and opinions about the [DOJ] and how it is operating[,]" and, relevant here, how it operated during the underlying arson investigation. *Id.*

       The DOJ argues that the information Mr. Sheppard obtained is unlikely to add to the fund of information that citizens use in making vital political choices, in part because the DOJ's review was not meant to reinvestigate the underlying arson. *See* Doc. 90, at. 8. The DOJ is wrong. The arson, the original prosecution, and now this FOIA litigation, has each drawn substantial attention from the victims' families, the public, and the press alike for the last three decades. *See e.g.*, Doc. 27-1, at 17 (explaining that entities filed FOIA requests seeking the Final

Memorandum prior to Mr. Sheppard's request and lawsuit); Doc. 27-2, at 4–42 (declaration attaching multiple news articles discussing the *Star's* allegations, the DOJ review, and the FOIA litigation). The results of Mr. Sheppard's efforts are likely to be extensively reported, reviewed, and relied upon by the public. Further, even though the DOJ did not re-investigate the underlying arson, the public still has an interest in the results of its investigation. Even assuming the DOJ uncovered no new information pertaining to the underlying arson and found no evidence of government impropriety, disclosure *still* serves the public's interest. Full disclosure rebuts the *Star's* public allegations of misconduct, restores public trust in the judicial and prosecutorial process, and brings a sense of closure with respect to this thirty-year inquiry. The first factor weighs strongly in favor of awarding attorney's fees because there is a significant public interest in the disclosed records.

### 2. Commercial Benefit and Plaintiff's Interest in the Records

Although identified as separate factors, the analysis of the second factor, the commercial benefit to the requestor, and the third factor, the nature of the requestor's interest in disclosure, are related. *See Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (analyzing the second and third entitlement factors together). As to the commercial benefit to Mr. Sheppard, he contends that he "is a private citizen and has no commercial interest in the results of his FOIA request," such that this "factor weighs entirely in favor of awarding fees and costs." Doc. 87, at 9. The DOJ does not argue Sheppard stands to gain a commercial benefit. Doc. 90, at 8. Accordingly, this factor weighs in favor of eligibility.

7

On the other hand, Mr. Sheppard certainly has a personal interest in the records he seeks. Mr. Sheppard was one of five individuals convicted after the arson,[1] and three of his four co-defendants remain in prison.[2] The requests are surely, at least to some extent, meant to advance personal interests. *Piper*, 339 F. Supp. at 21 (finding that "[t]here is little doubt that [P]laintiff is motivated by a distinct and personal interest in the documents he is seeking" where his mother was kidnapped and the documents concerned related alleged agency misconduct). However, public and private interests are not necessarily mutually exclusive. *Id.* at 21-22 (citing *Playboy Enters., Inc., v. U.S. Customs Serv.*, 959 F. Supp. 11, 16 (D.D.C. 1997)).

The DOJ argues that "Sheppard's own personal connection and interest in the documents . . . should disqualify him from receiving an award of attorney's fees." Doc. 90, at 10. However, this is not the case. *See, e.g.*, *Piper*, 339 F. Supp. at 21–22 (awarding attorney's fees where the court found a requestor had both a personal and public interest in the records at issue); *Williams v. F.B.I.*, 17 F. Supp. 2d 6, 9 (D.D.C. 1997) (awarding attorney's fees even where the plaintiff's "own interest in the records is [almost exclusively] personal"). This is far from a case in which a plaintiff seeks to use FOIA to subsidize exclusively private litigation against the Government or to discover information to obtain an exclusively personal gain. *See Miller*, 779 F.2d at 1390 ("It was not the purpose of Congress to subsidize essentially private disputes with the government."). To the contrary, here, Mr. Sheppard's personal interests in the records happen to align with the public's: identifying and rectifying alleged government

---

[1] Mr. Sheppard was released from prison in 2017, after the Supreme Court held that mandatory life sentences without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments, and applied the holding retroactively. *Miller v. Alabama*, 567 U.S. 460, 465 (2012); *Montgomery v. Louisiana*, 136 S.Ct. 718, 732-37 (2016).

[2] Earl Sheppard died of cancer on July 25, 2009, at a federal correction center in Butner, North Carolina. Doc. 102-1, at 88.

misconduct. The fact that Mr. Sheppard might—if the records contain exculpatory information—use what he learned to act in his own interests does not automatically disqualify him under this factor.

Finally, Mr. Sheppard's attorneys have represented him diligently over the last three years—for free. Under the third factor, courts can consider the effect that denying fees would have on attorneys representing clients pro bono. *Williams*, 17 F. Supp. 2d at 9. Rejecting Mr. Sheppard's request for attorney's fees could, and likely would, "discourage other attorneys from making a similar commitment" to represent FOIA requesters who cannot afford to fund years of litigation against the Government. *Id.*; *see also* S. Rep. No. 93–854, at 17S. Rep. No. 93–854, at 17 ("Too often the barriers presented by court costs and attorneys' fees are insumountable [sic] for the average person requesting information, allowing the government to escape compliance with the law.").

Because Mr. Sheppard does not have a commercial interest motivating his efforts to seek the records, and because his personal interests do not eclipse the benefit gained by the public, the third and fourth factors weigh in Mr. Sheppard's favor.

### 3. Reasonable Basis for Withholding

The fourth factor, whether the DOJ's failures had a reasonable or colorable legal basis, also weighs in Mr. Sheppard's favor. "Under the fourth factor, the Court determines "whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency . . . [was] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (citations and quotations omitted). The DOJ must have a reasonable basis not only for the exemption it ultimately cited, but also for any delay in producing records it

9

did not withhold.  *See Miller*, 779 F.2d at 1390. The reasonableness of the DOJ's litigation conduct is also a relevant consideration.  *See, e.g.*, *Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d at 69.

To begin, the DOJ has repeatedly failed to justify its flawed search efforts, including its inexplicable decision to not send Mr. Sheppard's FOIA request to other DOJ components it should have reasonably suspected held responsive records.  *See* Doc 21-1, at 3–7 (describing the DOJ's search efforts in response to the four related FOIA requests covering the DOJ's review of the underlying arson investigation).  Nor has the DOJ explained why, after supposedly already conducting multiple searches *before* Mr. Sheppard's FOIA request, it continued to produce thousands of additional responsive pages throughout this litigation.  *Id.*  Finally, the DOJ's languid conduct during this litigation—even controlling for the difficulties posed by a global pandemic—might fairly be described as "obdurate."  *Davy*, 550 F.3d at 1162.

At bottom, "FOIA is intended to work without court intervention; in a perfect world, a requester submits a request to an agency, and the agency responds to the request."  *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 85–86 (D.D.C.  2003).  That did not happen here.  Far from it, the DOJ put the burden on Mr. Sheppard and the Court to review, and correct, its deficient responses.  *See, e.g.*, Doc. 47 (explaining the inadequacies of the DOJ's searches); Doc. 59 (same).  Mr.  Sheppard received *thousands* of additional pages of records from the DOJ that would never have been identified, let alone produced, without this litigation.  The "Court has made ample findings demonstrating [the DOJ's] failure to carry its burden of proving that it had a colorable or reasonable basis" for failing to discharge its duties under FOIA.  *See Negley v. F.B.I.*, 818 F. Supp. 2d 69, 76–77 (D.D.C. 2011) (citation omitted); *see also* Doc. 37, at 12–18, 19–25; Doc. 47; Doc. 59; Doc. 76; Doc. 83.  The DOJ's handling of both the original FOIA request and this litigation accordingly justifies fees under this factor.

Turning to the substance of the DOJ's withholdings, even assuming the DOJ's claimed exemptions had a colorable basis, the DOJ had an obligation to provide "any reasonably segregable portion [of any responsive record] . . . unless [the segregable portions] are 'inextricably intertwined' with exempt portions." *Madel v. Dep't of Justice*, 784 F.3d 448, 453 (8th Cir. 2015); 5 U.S.C. § 552(b). The DOJ withheld several records, including various Memoranda of Investigation ("MOI") reflecting the DOJ's interviews with individuals involved with the underlying arson investigation, under exemption 7(C). The DOJ claimed that disclosure of the *identities* of the individuals with whom the DOJ spoke would constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6); *see also* Doc. 71-2. Never once has the DOJ satisfactorily explained why it refused to produce the *substance* of these interviews, stripped of any identifying information. Instead, the DOJ withheld many MOI in full. The DOJ's disregard for its obligation to produce any reasonably segregable information justifies fees under this factor. *See Williams*, 17 F. Supp. 2d at 9 (finding an award of attorney's fees appropriate where the agency "would have avoided years of needless litigation if it had simply complied with FOIA's segregability requirement and released discoverable portions of the document[s].").

The DOJ certainly took defensible positions throughout this litigation, even when the Court ultimately ruled against it. Advancing a losing argument is not alone enough to justify fees under this factor. But the DOJ's flawed search efforts and dilatory conduct went beyond vigorously litigated factual or legal disputes; here, they had no reasonable basis. While FOIA should have paved Mr. Sheppard's path to obtaining the records he sought, he and his counsel were forced to fight for every page. Accordingly, the fourth factor weighs in favor of awarding attorney's fees. *See Williams*, 17 F. Supp. 2d at 9 ("Where, as here, the government has

11

frustrated the policy of open government embodied in [FOIA] and necessitated years of costly litigation, plaintiffs need and deserve adequate incentive to pursue their cause in court.").

### 4. Sum of the Factors and the Amount of Fees

As all the relevant factors weigh in Mr. Sheppard's favor; he is entitled to attorney's fees.

Having determined that Mr. Sheppard is both eligible and entitled to attorney's fees under FOIA, all that remains is to determine the amount. The Court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1085 (8th Cir. 2000). The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the "lodestar" amount. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The Court does not presently have enough information to do this calculation. Therefore, Mr. Sheppard shall, within fourteen days, submit a specific request for reasonable costs and fees along with materials substantiating that request. The DOJ will then have fourteen days to respond.

## III. Sanctions

Mr. Sheppard asks the Court to use both statutory and its inherent authority to sanction the DOJ and award him attorney's fees, costs, and expenses, arguing that the DOJ's litigation conduct required "numerous and repetitive orders instructing Defendant to conduct searches, produce documents, reprocess Plaintiff's FOIA request, provide status updates, and inform the Court [whether] Defendant ha[d] complied with all of its orders." Doc. 87, at 12. However, the Court has already determined Mr. Sheppard is entitled to attorney's fees and litigation costs under FOIA. It is therefore unnecessary to determine whether the DOJ's conduct rises to the

level of justifying sanctions. For that reason, to the extent the Fee Petition requests sanctions, it will be DENIED as moot.

## IV. Conclusion

Because Mr. Sheppard is both eligible for and entitled to attorney's fees under FOIA, his Fee Petition is hereby GRANTED. *See* Doc. 86. Within fourteen days, Mr. Sheppard shall submit a calculation of his reasonable fees and litigation costs, along with materials substantiating that request. The DOJ shall then have fourteen days to file a response to Mr. Sheppard's request. After hearing from both parties, the Court will evaluate the reasonableness of Mr. Sheppard's request. Mr. Sheppard's request for sanctions is DENIED as moot. *See id.*

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 9/21/2021
Jefferson City, Missouri