# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

BRYAN E. SHEPPARD,

        Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendants.

Case No. 4:17-cv-1037-NKL

## ORDER

Before the Court is the request by Defendant Bryan Sheppard, as the prevailing party under the Freedom of Information Act ("FOIA"), for Calculation of Reasonable Attorneys' Fees and Costs, Doc. 108. The Court has previously determined Mr. Sheppard is both eligible for and entitled to fees under FOIA. *See generally* Doc. 105 (Order Granting Mr. Sheppard's Request for Attorneys' Fees). The Court previously directed Mr. Sheppard to submit a concrete request for attorneys' fees, along with substantiating materials from which the Court could assess the reasonableness of his request ("Fee Request" or "Request"). *Id.* at 13. Mr. Sheppard's counsel requests a total of $444,314 in attorneys' fees and $734.98 in costs. *See* Doc. 108 at 2. After review of the Request, and the DOJ's opposition to it, Doc. 111, the Court grants Mr. Sheppard's request in part—subject to the reductions discussed below—and orders the DOJ to pay attorneys' fees of $344,122.30 and costs of $734.98.[1]

---

[1] The DOJ does not contest the reasonableness of Mr. Sheppard's costs. The Court too finds them reasonable, and therefore awards the full amount requested.

# I.  BACKGROUND

This Court has, several times, discussed the facts underlying this case. *See* Doc. 37 (Judge Smith's Order Denying Summary Judgment); Doc. 47 (Judge Smith's Order Directing Defendant to Conduct Additional Searches); Doc. 104 (Order Granting Summary Judgment in Part); Doc. 105 (Order Granting Mr. Sheppard's Request for Attorneys' Fees). In sum, this case concerns a FOIA request made by Plaintiff Bryan Sheppard to the United States Department of Justice ("DOJ") relating to its investigation into government misconduct during the investigation and prosecution of a 1988 arson that killed six Kansas City firefighters. This Court found that the DOJ's search efforts were deficient and that it improperly withheld responsive records; the Court also found Mr. Sheppard to be eligible for and entitled to reasonable attorneys' fees and costs under FOIA. *See* Doc. 104; Doc. 105. All that remains is to determine the amount of fees to which Mr. Sheppard is entitled. To that end, the Court ordered Mr. Sheppard to calculate his requested fees and costs, and then provided the DOJ an opportunity to respond. *See* Doc. 105.

# II.  DISCUSSION

The DOJ contests the reasonableness of Mr. Sheppard's request for attorneys' fees, and argues that, for various reasons, the fees should be reduced. The Court addresses below the various arguments raised by the DOJ pertaining to Mr. Sheppard's request for attorneys' fees.

## A. The DOJ's Arguments Regarding Whether Mr. Sheppard Is Entitled to Attorneys' Fees.

The Court begins with the DOJ's argument that it reasonably withheld records requested by Mr. Sheppard. The DOJ devotes the first three pages of its argument in opposition to Mr. Sheppard's Request to the fourth *Miller* factor, the reasonableness of its withholdings. Doc. 111, at 8 (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985)). The *Miller* factors

are used—indeed, were already used—to analyze whether a FOIA plaintiff is entitled to fees in the first instance, not to determine the reasonableness of any fee request made by a party entitled to fees under FOIA. As the DOJ concedes, the Court has already concluded that Mr. Sheppard is entitled to fees, *see* Doc. 111, at 9; Doc. 105, at 2–12 and has determined that all four of the *Miller* factors weigh in favor of Mr. Sheppard fee request. The DOJ did not appeal or ask the Court to reconsider that finding. Mr. Sheppard's entitlement thus has long since been established. The Court rejects the DOJ's attempt to re-invoke the fourth *Miller* factor and relitigate Mr. Sheppard's entitlement to fees.

### B. Whether Mr. Sheppard's Request is Reasonable

The Court next turns to the reasonableness of Mr. Sheppard's request, the only issue presently before the Court. District courts have substantial discretion in determining the reasonableness of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1085 (8th Cir. 2000). An appellate court "will not disturb [the awarded amount] absent clear abuse of that discretion." *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) (quoting *Walton Gen. Contractors, Inc./Malco Steel, Inc. v. Chi. Forming, Inc.*, 111 F.3d 1376, 1385 (8th Cir. 1997)).

Courts typically calculate reasonable attorneys' fees by multiplying the hours reasonably expended in litigation by a reasonable hourly fee, producing the "lodestar" amount. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The fee applicant bears the burden of demonstrating the reasonableness of both the number of hours and the hourly rate. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970–71 (D.C. Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)). The resulting fee is presumed to be reasonable. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 564. Finally, the Court retains discretion to adjust the

lodestar amount based on other relevant factors. *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 47 (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1499–1500 (D.C. Cir. 1984)).

### i. Whether the Proposed Billing Rates are Reasonable

The DOJ does not contest the rates charged by Mr. Sheppard's attorneys. *See* Doc. 111, at 12. For that reason, and because the requested rates are comparable to rates identified as average rates by the Missouri Lawyers Weekly "Billing Rates" report and the rates recognized by courts as reasonable for the Kansas City Market, the Court agrees that the rates requested are reasonable. *See* Doc. 108, at 7–10.

### ii. Whether Mr. Sheppard's Request to Recover for 1062.5 Hours of Attorney Time is Reasonable

The party seeking fees must submit adequate documentation supporting the requested number of hours and must make a good-faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327–28 (D.C. Cir. 1982). A fee applicant can meet its burden by providing affidavits, declarations, and billing records. *See, e.g.*, *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988). "By and large, the Court should defer to the winning lawyer[s'] professional judgment as to how much time [they were] required to spend on the case," especially in cases in which recovery of fees is not certain. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Tussey v. ABB, Inc.*, Case No. 06-4305-NKL, 2019 WL 3859763, at *5 (W.D. Mo. Aug. 16, 2019) ("Class Counsel brought this case without guarantee of reimbursement or recovery, so they had a strong incentive to keep costs to a reasonable level, and they did so."). Once a plaintiff substantiates his request, the burden shifts to the defendant to rebut the presumption of reasonableness with specific evidence. *Covington v.*

*Dist. of Columbia*, 57 F.3d 1101, 1109–10 (D.C. Cir. 1995) (citation omitted). The resulting number is multiplied by a reasonable hourly rate to reach the lodestar amount.

Mr. Sheppard submitted contemporaneous billing records and a declaration from one of his attorneys, Stephanie Sankar, to substantiate his request to recover for 1062.5 hours billed by his attorneys over the course of their four-year representation. *See generally* Doc. 108; Doc. 108-1. The DOJ argues these supporting materials are defective for various reasons. The Court will address each in turn.

### a. Whether Mr. Sheppard's Attorneys Were Impermissibly Vague in Their Billing Records.

To begin, the DOJ takes issue with the specificity of the materials Mr. Sheppard submitted to support his fee request. Records submitted to substantiate a request for fees must be "sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. The date, amount of time . . . expended, and the general subject of the services provided" is generally all that is required." *Hall*, 115 F. Supp. 3d at 32 (citing *Hensley*, 461 U.S. at 437 n. 12).

The Court has reviewed the supporting materials, and generally finds them to be sufficiently detailed, specific, and clear. *See generally id.* The DOJ targets six specific time entries by Mr. Sheppard's attorneys, amounting to 11.6 hours or $5,510.00 in requested fees, that it alleges to be deficient. The Court agrees with the DOJ with respect to three time entries, totaling 2.6 hours, and has adjusted the ultimate fee award accordingly. As explained below, the Court overrules the DOJ's objections to the remaining three time entries.

First, on March 14, 2018, Megan Egli, a partner working on Mr. Sheppard's case, billed

5

0.5 hours to "Discuss case with Ms. Sankar[,]" another partner working on the matter. Doc. 108-1, at 23.[2] The narrative description of this entry is vague and gives the Court little information from which to assess reasonableness. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, No. 2:13-cv-4022-NKL, 2018 WL 5848994 (W.D. Mo. Nov. 7, 2018) (reducing hours where "multiple time entries . . . reference[d] communications with other attorneys without specifying the subject"); *Craig v. District of Columbia*, 197 F. Supp. 3d 268, 280 (D.D.C. 2016) (finding "insufficiently detailed" "many entries perfunctorily stat[ing] that counsel 'e-mailed' or sent an 'email to' someone, had a 'phone discussion w/' someone, or 'reviewed and responded to' an e-mail or a document") (citations omitted). However, read in context, and in conjunction with Ms. Sankar's own corresponding time entry, it becomes clear that Ms. Egli and Ms. Sankar discussed Rule 26 disclosures and case deadlines while this matter was in its preliminary stages. This is sufficient. *Ludlow v. BNSF Ry. Co.*, No. 12-CV-3113, 2014 WL 2155086, at *5 (D. Neb. May 22, 2014) (finding time entries were not vague, "especially when read in context with surrounding time entries.") *aff'd*, 788 F.3d 794 (8th Cir. 2015).

Second, on March 4, 2019, Ms. Egli billed 0.8 hours to "Discuss strategy with Ms. Sankar. Email Mr. Sheppard regarding case status."[3] Doc. 108-1, at 24. It is clear from Ms. Egli's surrounding time entries—as well as Ms. Sankar's corresponding entry—that Ms. Egli discussed strategy relating to the summary judgment briefing that was ongoing at the time. A portion of that time entry was also devoted to informing Mr. Sheppard of the status of his case. While more detail would have been welcome—and indeed, would have been necessary, had additional time entries

---

[2] Pin Citations to Plaintiff's billing records refer to the ECF page number (1–42), rather than the internal page number on the billing records (1–20, with the exhibits unnumbered).

[3] While the DOJ omits the second sentence of the time entry from its argument, the Court assumes the DOJ's challenge is to the time entry in its entirety.

not shed light on the specific task being accomplished[4]—the Court had no trouble discerning how Ms. Egli spent her time in this instance, and there is no indication that it was unreasonably spent.

Here, the records show that Ms. Egli spent 0.8 hours discussing summary judgment strategy internally, and updated Mr. Sheppard thereafter. Because the entry permits the Court to assess the reasonableness of the tasks and the time spent on them, and the time spent appears reasonable, the entry is sufficient. *Washington v. Denney*, No. 14-CV-6118-NKL, 2017 WL 4399566, at *6 (W.D. Mo. Oct. 3, 2017) ("[B]lock-billing is problematic only where the hours billed for multiple tasks appears excessive, or where billed time needs to be eliminated for certain tasks[.]"); *see also Hall v. Sebelius,* No. 13-CV-295-JRT-LIB, 2016 WL 424965, at *6 (D. Minn. Feb. 3, 2016) (finding block billing appropriate given that the grouped tasks were plausibly related and the cumulative time spent was not unreasonable).

Third, on October 31, 2019, Ms. Shastry, an associate working on Mr. Sheppard's case, billed 0.3 hours to "Draft correspondence about upcoming pro bono matter regarding FOIA records." Doc. 108-1, at 32. This was Ms. Shastry's first billing entry. While general references to correspondence, meetings, research, and similar tasks, without more, can justify a reduction, *In re Meese*, 907 F.2d at 1204, here, Ms. Shastry spent 0.3 hours preparing to begin working on Mr. Sheppard's case. "In examining the fee petition and evaluating the reasonableness of the hours claimed, it is essential for the trial court to be practical and realistic about how lawyers actually operate in their day-to-day practice." *Smith v. D.C.*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006). Part of the reality of legal practice is that, at times, additional or replacement lawyers will need to be

---

[4] *See In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing an award because "[t]he time records maintained by the attorneys, paralegals and law clerks are replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed")

staffed on an ongoing matter. As a result, some amount of time will be necessary to onboard that attorney. So long as that time is not excessive, and it is spent in a productive way, the Court will not second guess it.[5] It was reasonable for Ms. Shastry to spend 0.30 hours on correspondence as she prepared herself to receive her first assignment on this case. While additional information would be helpful, details gleaned from Ms. Shastry's next time entry from the same day, reflecting a meeting with Ms. Sorenson regarding an assignment to review the DOJ's *Vaughn* Indices ahead of a scheduled status conference, and Ms. Sorenson's time entry for the same date, provide enough context to allow the Court to assess the reasonableness of the requested fees. The Court will not strike this time entry.

Finally, the DOJ argues that three, time entries from Ms. Sorenson are impermissibly vague. On March 5 and March 8, 2019, Ms. Sorenson billed 0.6 hours to "[e]xchange various emails regarding case issues." Doc. 108-1, at 40. On September 11, 2019, Ms. Sorenson billed 0.2 hours to "Complete various tasks related to amended case deadlines." Doc. 108-1, at 40. The Court agrees that these entries are too vague. There is nothing from these specific entries, or the surrounding time entries, that allows the Court to assess the reasonableness of this time. Without the ability to discern with whom Ms. Sorrenson communicated and the subject of the communication, the entries are too vague to substantiate the requested fees. Because most of the billing records provide far more detail, the Court struck only these three, time entries—totaling 0.8 hours—from the total hours requested.

After review of the billing records, the Court identified several additional entries by Ms.

---

[5] Mr. Sheppard's counsel has represented that 175 hours billed to Mr. Sheppard's case were eliminated from the Request, given they were billed "developing background knowledge on FOIA and the underlying case facts and procedural history." *See* Doc. 108-1, at 8–9. This further demonstrates the reasonableness of this limited request for Ms. Shastry's time. Indeed, Ms. Shastry's time was not billed to simply "read in" to the case.

Sorenson that were almost identical to the ones identified by the DOJ. Accordingly, the Court also strikes entries on October 11, 2018, and May 8, 2018, totaling 0.30 hours, to "Exchange multiple e-mails regarding various case issues." Doc. 108-1, at 38–39. The Court also strikes an entry for 0.40 hours on March 13, 2019, billed to "Exchange multiple e-mails regarding various case issues and upcoming deadlines." Doc. 108-1, at 40. On August 14 and August 15, 2020, Ms. Sorenson billed a total of 1.10 hours to exchange multiple e-mails "regrading recent case developments" and to review and analyze "various materials related to same"; these entries are, similarly, too vague for the Court to assess their reasonableness, and therefore the Court strikes them.

Cumulatively, the Court is striking 2.6 hours, all billed by Ms. Sorenson, because of vague time entries. Given that the DOJ does not contest the rate charged by any of Mr. Sheppard's attorneys, this equates to a reduction of $897.00.

### b. Whether Mr. Sheppard Seeks to Recover Fees for Tasks that Were Unrelated to this Litigation.

The DOJ argues that Mr. Sheppard seeks to recover for various tasks that are unrelated to this litigation or the request for Criminal Division records. With one exception, each of these challenges is rejected.

First, the DOJ challenges several time entries reflecting work done by Mr. Sheppard's counsel relating to Mr. Mike McGraw. Mr. McGraw was a reporter at the Kansas City Star who also submitted a FOIA request to obtain records related to the 1988 arson, including the Investigative Report. *See* Doc. 19-1, at 3–7, 23–24 (Decl. of DOJ Attorney John E. Cunningham III explaining the four related FOIA requests submitted seeking to obtain records relating to the DOJ's review of the investigation and prosecution of the 1988 arson and attaching letter responses to those FOIA requests); Doc. 37-1 (Order from Judge Smith describing the *Star*'s FOIA request) *see also* Aug. 17, 2011 Ltr. from Rena Y. Kim to Mike McGraw Regarding FOIA Request,

(Unredacted version of Doc. 19-1, at 23–24, DOJ's letter response to Mr. McGraw's July 25, 2011 FOIA request).[6]  It is reasonable that Mr. Sheppard's counsel spent time working with, and learning from, Mr. McGraw, who submitted a substantially similar—if not identical—FOIA request, and wrote numerous articles about the 1988 Arson, leading up to the DOJ's review.  At bottom, Mr. Sheppard's counsel spent a reasonable amount of time working with Mr. McGraw; and that work was done in furtherance of Mr. Sheppard's FOIA request and, ultimately, this litigation.  *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 371 (D.C. Cir. 2006) (finding no abuse of discretion in award of fees for time spent on tasks "in furtherance of, and therefore directly related to" the plaintiff's FOIA claim).

Next, the DOJ challenges time billed for tasks relating to other DOJ components, such as the Bureau of Alcohol Tobacco and Firearms ("ATF") or Office of the Inspector General ("OIG"). The Court will not exclude these time entries.  Mr. Sheppard's attorneys do not attempt to recover for work on unrelated FOIA requests submitted to different DOJ components.  To the contrary, this Court, in this case, directed the DOJ to search for and produce records responsive to Mr. Sheppard's FOIA request in other DOJ components outside of the Criminal Division.  *See, e.g.*, Doc. 56, at 2; Doc. 59, at 1–2.  The DOJ itself recognized that fact, Doc. 48-1, at ¶ 3 (Updated Decl. of John E. Cunningham III), and indeed, for a time, provided regular status updates to the Court on search efforts taking place at both the OIG and ATF.  *See, e.g.*, Doc. 61; Doc. 61-1; Doc. 61-2.  Accordingly, work done by Mr. Sheppard's attorneys to analyze productions from and correspondence with other DOJ components was related to this litigation, reasonably expended, and compensable.  *Jud. Watch, Inc.*, 470 F.3d at 371.

---

[6] Available at: https://41af3k34gprx4f6bg12df75i-wpengine.netdna-ssl.com/wp-content/uploads/sites/19/2017/12/FOI-Report.pdf

Finally, the DOJ challenges an entry on March 13, 2020, from Ms. Sorenson for 1 hour to "Participate in call with documentary team." Doc. 108-1, at 41. Mr. Sheppard has not explained how this work had anything to do with this litigation, and the Court can see no relation. As such, the DOJ should not be made to bear the associated fees.

There are additional time entries for documentary-related tasks that the DOJ did not address. On March 12, 2020, Ms. Sorenson billed 0.20 hours to "[e]xchange multiple e-mails regarding upcoming call with documentary team, and various issues related to same." Doc. 108-1, at 41. Ms. Sankar also billed 1.80 hours on August 31, 2020, to "[p]repare for and participate in video shoot for documentary about underlying case and intersection with our pro bono work." Doc. 108-1, at 31. The Court will subtract this time from the total.

In total, this equates to a reduction of 1.2 hours ($414.00) for Ms. Sorenson's work with the documentary team and 1.8 hours ($855.00) for Ms. Sankar's time preparing for and shooting the documentary. Accordingly, the Court subtracts $1,269.00 from the total amount requested.

### iii. Whether Mr. Sheppard Can Recover for Time Spent Reviewing Records Produced by the DOJ and the DOJ's *Vaughn* Indices.

The DOJ argues that Mr. Sheppard's fee request should be reduced because he cannot recover for the time his attorneys spent reviewing produced records and the DOJ's *Vaughn* Indices. Doc. 109, at 15 (citing *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) ("CREW I")). To the DOJ, the time Mr. Sheppard's counsel spent reviewing—and re-reviewing—its productions and *Vaughn* Indices was "simply the price of making [a FOIA] request." *Id.* Mr. Sheppard responds that his counsel was forced to bill that time in response to the DOJ's actions—specifically its "repeated failures—as outlined in multiple Court Orders—to conduct adequate searches for responsive documents and appropriately explain which documents had been produced." Doc. 113, at 6.

To begin, the DOJ's invocation of *CREW I* is unpersuasive. In that case, as here, the plaintiff sought the production of certain documents under FOIA. That is, however, where the similarities stop. There, the court set a deadline by which responsive documents had to be produced. The DOJ met that deadline and produced documents, subject to withholdings under certain FOIA exemptions. The plaintiff never challenged any of those withholdings, and the case was voluntarily dismissed. Indeed, underlying the court's decision to reject the plaintiff's request to recover fees for the time spent reviewing the documents and accompanying *Vaughn* Index was that the plaintiff never *challenged* any withholding—or argued that the DOJ's search or production efforts was defective—and that the case was ultimately voluntarily dismissed by the parties. *CREW I*, 825 F. Supp. 2d at 231. Accordingly, the court considered the plaintiff's review to be "post-relief activity," rather than a part of the litigation. *Id.* The situation here is very different. Here, the parties engaged in a protracted, multi-year dispute regarding the sufficiency of the DOJ's search efforts and the appropriateness of the DOJ's decision to withhold certain documents. The expenditures of time and money made for Mr. Sheppard to litigate this FOIA dispute were far from the typical ones made by FOIA requestors.

The DOJ specifically challenges two of Ms. Shastry's time entries on February 23 and February 24, 2020, totaling 9.5 hours, both which relate to analyzing the DOJ's amended *Vaughn* Index "and changes in status for documents requested through FOIA request." Doc. 108-1, at 33. Shortly before Ms. Shastry billed the time, on February 11, 2020, the DOJ submitted a Court-ordered brief addressing the scope of its search for records responsive to Mr. Sheppard's FOIA requests, and a few days later, filed an amended *Vaughn* index and produced additional documents located in response to the Court's expressed concerns with the DOJ's search efforts. On March 6, 2020, as previously ordered by the Court, Mr. Sheppard responded to the DOJ's filing, challenging certain aspects of the DOJ's search. Mr. Sheppard's response was incorporated into an Order from this Court requiring the DOJ to conduct additional searches, file an amended declaration and

*Vaughn* Index, and produce documents to Mr. Sheppard. *See* Doc. 47 (Order from Judge Smith). To file his response, Mr. Sheppard had to review the additional documents produced by the DOJ and the newly filed *Vaughn* index to determine whether the DOJ complied with the Court's orders. *See Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F.Supp.3d 149, 159 (D.D.C. 2015) ("[T]o the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fees award.").

Situated in context, fees incurred as part of Ms. Shastry's review cannot be considered post-review activity or fees that Mr. Sheppard "would have had to expend . . . had DOJ timely produced the documents without litigation[.]" *Cf. CREW I*, 825 F. Supp. 2d at 231. Indeed, "[i]t would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation." *N.Y. Times Co. v. CIA*, 251 F. Supp. 3d 710, 716 (D.D.C. 2017) (quoting *Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d at 75). Allowing recovery of fees in this context is consistent with a core purpose of awarding fees in FOIA cases, "to compensate a complainant for enduring an agency's resistance to complying with FOIA." *Barnard v. Dep't of Homeland Sec.*, 656 F.Supp.2d 91, 97 (D.D.C. 2009). The Court therefore rejects the DOJ's arguments on this point.

### iv. Whether Mr. Sheppard's Attorneys Seek Recovery for Duplicative or Overstaffed Tasks and Whether Mr. Sheppard Devoted Excessive Time to Briefing

The DOJ next argues that Mr. Sheppard's attorneys were overstaffed, billed for duplicative work, and devoted excessive time to briefing for what it considers to be a "procedurally straightforward FOIA case[.]" Doc. 111, at 15 (citing *Elec. Priv. Info. Ctr. v. Dep't of Homeland*

*Sec.*, 197 F. Supp. 3d 290, 296 (D.D.C. 2016)) ("*EPIC I*"). Mr. Sheppard responds that this case was far from a typical FOIA case, and that it was the DOJ's own actions that motivated Mr. Sheppard's staffing decisions and the time required to litigate this case. As discussed below, there are three areas in which reductions are appropriate, but the Court rejects most of the DOJ's arguments.

First, in cases in which the ability to recover fees is uncertain, courts should, within reason, "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. Accordingly, the Court will give some deference to Mr. Sheppard's lawyers' assessment of the tasks required, the time required to complete those tasks, and the division of labor between different attorneys. *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 293 F. Supp. 3d 17, 31 (D.D.C. 2017) ("The Court need not "engage in a picayune battle of the ledgers.") (internal quotation omitted); *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 87 F.Supp.3d 223, 235 (D.D.C. 2015) ("It is axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection' . . . . The Court therefore need not—and should not—scrutinize every billing entry.") (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

The DOJ's arguments concerning excessive billing are largely unpersuasive. For example, the DOJ asserts that the Court should reduce the time billed for Mr. Sheppard's summary judgment by between 60% and 85%. This argument is not only unsupported, but also undercut by the complexity of the case and the DOJ's own litigation conduct. *Id.* at 29–30, 31. Therefore, the Court will not discount the Fee Request based on the DOJ's conclusory argument that Mr.

Sheppard's case was staffed with too many attorneys who billed an excessive amount to litigate this case.

Further, as should be abundantly clear, this case is far from a typical FOIA case, a fact highlighted by the very cases cited by the DOJ. For example, in *Reyes*, the court reduced a fee request because the matter "was resolved in less than five months, involved only 153 pages of records, and required nothing more than periodic status reports." *Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 169 (D.D.C. 2018). The court in *Reyes* found that using multiple attorneys was unnecessary "[d]ue to the straightforward nature of the case, which involved only 153 documents and did not require summary judgment briefing[.]" *Id.* at 170. The DOJ also points to *EPIC I* to suggest that Mr. Sheppard's attorneys overstaffed and overbilled. *EPIC I* was "a procedurally straightforward FOIA case about one relatively short document." 197 F. Supp. 3d at 295–96. This case, in contrast with *Reyes* and *EPIC I*, involved four years of litigation, at least six substantive orders by this Court, multiple court-ordered attempts by the DOJ to redo searches for and produce responsive documents and *Vaughn* Indices, fourteen status reports by the DOJ, and multiple rounds of briefing. *See Elec. Privacy Info. Ctr.*, 999 F.Supp.2d 61, 74 (D.D.C. 2013) ("If FOIA's statutory requirements as applied to this case were so 'simple' and 'straightforward,' DHS might have been better served by complying with them—rather than by ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court.").

Considering these principles, the Court rejects most of the DOJ's challenges of overbilling and overstaffing. There are three exceptions. First, Mr. Sheppard seeks to recover a total of 214.50 hours for time spent preparing for and filing the seventeen-page Complaint. Mr. Sheppard defends this number by pointing to the lengthy procedural history underlying Mr. Sheppard's case, starting

with the investigation, stretching through a criminal trial, and continuing through the allegations of government misconduct made years later. The DOJ responds that spending 214.50 hours on the Complaint is grossly unreasonable, especially given the experience of Mr. Sheppard's attorneys. The Court finds that, even considering the complicated background of this case, spending 214.5 hours drafting the complaint was excessive. Courts have reduced requests to recover for even 18.4 hours spent on a nine-page FOIA complaint, ultimately compensating the attorneys for just 9.5 hours. *Elec. Priv. Info. Ctr.*, 80 F. Supp. 3d at 158. Another court reduced a request for 20 hours—spent on two different FOIA complaints—to 17 hours. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011). Most cases identified by the Court similarly approved far fewer hours for drafting complaints. *See e.g.*, *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 70 (D.D.C. 2019) (approving between 8 and 10 hours for time spent on complaint, after plaintiff reduced requested hours to account for use of multiple attorneys); *Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d 61, 74 (D.D.C. 2013) (refusing to decrease request for 8.5 hours to draft a 9-page Complaint); *CREW I*, 825 F. Supp. 2d at 232 (approving as reasonable a request for 7 hours spent on preparing, finalizing, and filing FOIA complaint, especially when paired with plaintiff's own reductions); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 350 (D.D.C. 2014) (approving 21.4 hours for work on complaint).

Even considering the complex background of Mr. Sheppard's case and the fact that the plaintiffs involved in the cases mentioned above were repeat players in FOIA litigation, Mr. Sheppard's request is unreasonable. The Court therefore will reduce the total hours billed to prepare for, draft, and file the Complaint by 75%. Further, because Ms. Sorenson's involvement with the Complaint appears to have been largely tangential—totaling 11.2 hours, with each of her

entries that reference the Complaint largely focused on other tasks—the Court will only reduce the remaining 203.2 hours billed by Ms. Sankar, Ms. Egli, and Mr. Shelley. In other words, the Court will permit Mr. Sheppard to recover for 50.8 hours[7] of his attorneys' work preparing for, drafting, and filing the Complaint, or $24,130.00. This number more reasonably compensates Mr. Sheppard's attorneys for their inarguably substantial efforts in preparing for and drafting the Complaint—time expended only after the DOJ failed to comply with its obligations. *See Elec. Priv. Info. Ctr.*, 72 F. Supp. 3d at 350 ("The Court notes that the time EPIC spent preparing the Complaint was incurred only because of the FBI's admitted failure to comply with the law.") (internal citation omitted). This equates to a reduction of $72,390.00 in the request for attorneys' fees.

Second and third, the DOJ identifies two specific examples of cumulative or excessive billing. From November 19–21, 2018, Ms. Sorenson billed 5.5 hours to "prepare for a client call" and "exchange multiple emails regarding client call." Doc. 108-1, at 39. And, on March 2, 2020, Ms. Sankar and Ms. Sorenson billed a combined 6.7 hours to "prepare for" and "participate in case team strategy meeting." Doc. 108-1, at 29, 41. The DOJ argues that the Court should strike this time, and all similar entries, in their entirety.

The billing records provided by Mr. Sheppard demonstrate that Mr. Sheppard's attorneys diligently litigated this matter. However, there are numerous entries—some quite lengthy—for client calls and strategy discussions. The Court will not eliminate these entries, because such activities are indeed necessary, especially in this case, with its convoluted, and frankly unique, procedural background. But the DOJ is correct that many of these entries are excessive, and at

---

[7] This is in addition to the 11.2 hours billed by Ms. Sorenson, which the Court did not include in the reduction.

least partially stem from the fact that Mr. Sheppard's case was litigated by a larger case team. The Court finds a reduction of 5%, or $22,215.7 to be appropriate in this case, to account for any cumulative efforts resulting from the involvement of multiple attorneys. *M.B. v. Tidball*, No. 2:17-CV-4102-NKL, 2020 WL 1666159, at *15 (W.D. Mo. Apr. 3, 2020) (reducing fee request by 10% to account for inefficiencies inherent in representation by multiple attorneys, such as internal strategy and coordination efforts), *aff'd sub nom. M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021).[8]

### v. Whether Mr. Sheppard Can Recover for Time Spent Seeking Extensions.

The DOJ next challenges 11.7 hours billed to seek extensions of Court deadlines. Time spent requesting extensions is generally not recoverable in the Eighth Circuit. *See Summerville v. Trans World Airlines, Inc.*, No. 96-CV-02379, 1999 WL 33134345, at *4 (E.D. Mo. Sept. 28, 1999) (citing *Steele v. Van Buren Public School Dist.*, 845 F.2d 1492, 1496 (8th Cir. 1988). Mr. Sheppard does not argue, and the Court cannot see, any reason why the motions for extensions in this case should be treated differently. Accordingly, the Court will reduce Mr. Sheppard's fee request by 7.2 hours, which amounts to a reduction of $3,420.[9]

---

[8] In *Tidball*, the Court reduced fees by 10% to account for inefficiencies caused by the involvement of both multiple attorneys *and* multiple law firms and organizations. Because Mr. Sheppard is represented only by attorneys from Shook, Hardy & Bacon, the Court will reduce the award by 5%, given that only part of the Court's concern in *Tidball* was implicated here.

[9] Two entries challenged by the DOJ are block entries by Ms. Sankar on November 12 and November 13, 2018. *See* Doc. 108-1, at 28. These entries bill for both tasks related to an extension of time and to researching and drafting Mr. Sheppard's summary judgment briefing. In the exercise of its discretion, the Court halved both entries and subtracted half of the claimed hours from the total 11.7 hours challenged by the DOJ for the request for extension of time. This accounts for the portion of both entries spent on recoverable tasks.

### vi. Whether the Court Should Decrease Mr. Sheppard's Request Because He Seeks to Recover for Issues on Which He Did Not Prevail.

Finally, the DOJ's argues for a reduction in the fees for hours billed to matters on which Mr. Sheppard did not substantially prevail. However, the Court need not reduce fees simply because a plaintiff did not recover everything it requested. *Hensley*, 461 U.S. at 435. As the Supreme Court has stated:

> "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . The result is what matters."

*Id.* Accordingly, this Court will not employ a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.*

The DOJ challenges several entries which were allegedly dedicated to issues on which Mr. Sheppard did not prevail. First, 17.9 hours were billed for work on the DOJ's motions for extensions of time. The DOJ argues Mr. Sheppard did not substantially prevail because the Court ultimately granted those motions. However, much—if not all—of that time was spent dealing with what the Court has already described as the DOJ's languid response to court-ordered searches and additional productions of documents. *See* Doc. 105 at 10. Mr. Sheppard had no choice but to police the DOJ's response—and the speed of that response—and the Court therefore will permit recovery for hours billed in connection with the DOJ's extension requests. *See Hall*, 115 F. Supp. 3d at 29.

The DOJ next points to 50.9 hours that were billed for seeking attorneys' fees and sanctions. The DOJ argues that, because Mr. Sheppard did not substantially prevail with respect to sanctions, the hours assessed should be reduced by half. There are three problems with this argument. First, Mr. Sheppard's failing on his request for sanctions does not mean

that he did not substantially prevail on the Motion for Attorneys' Fees and Sanctions. Second, even if it did, losing one motion as part of a greater litigation effort that was ultimately successful does not automatically justify a reduction to a fee request. *See Hall*, 115 F. Supp. 3d at 29 ("The Court finds that plaintiffs' actions in diligently pursuing their claims were reasonable—even those that were ultimately unsuccessful—and it will not use the benefit of hindsight to scrutinize every one of plaintiffs' actions."). Third and finally, even if the Court's decision not to sanction the DOJ did justify a reduction, the DOJ wildly inflates the role Mr. Sheppard's sanction request played in his briefing. Mr. Sheppard devoted a *single* page to sanctions in his Motion, s*ee* Doc. 87 at 12 (Mr. Sheppard's Mot. For Attorneys' Fees and Sanctions), and less than a page to it in his Reply, *see* Doc. 93, at 6–7 (Mr. Sheppard's Reply in Support of Attorneys' Fees and Sanctions). For these reasons, the Court will not reduce Mr. Sheppard's request for time spent on the Motion for Attorney's Fees and Sanctions.

Finally, the DOJ argues that Mr. Sheppard's fee request should be reduced because 269.4 hours were billed to litigate the DOJ's reliance on certain FOIA exemptions to withhold documents. The DOJ argues that, in its final *Vaughn* Index, the DOJ withheld 615 responsive records, and Mr. Sheppard only challenged 80. Of those 80, the Court ordered the DOJ to produce 58. The DOJ argues that Mr. Sheppard only "prevailed" with respect to those 58 documents, out of 615, a 9.4% success rate. Consequently, the DOJ argues, the Court should reduce the 269.4 hours by 90.7%. The Court concludes, however, that reducing these hours "would understate the degree of [Mr. Sheppard's] success and would almost amount to a free pass for the government's obdurate behavior." *Bloomgarden v. U.S. Dep't of Just.*, 253 F. Supp. 3d 166, 179 (D.D.C. 2017).

To begin, the DOJ's attempt to frame Mr. Sheppard's success in reference to the 615 total documents withheld is unpersuasive. Mr. Sheppard did not challenge every document the DOJ withheld; only 80. Of those, the Court ordered 58 produced. This equates to a success rate of 72.5%.

In any event, and perhaps more to the point, the Court rejects the DOJ's invitation to reduce a FOIA claimant's award of attorneys' fees based on the number of documents they successfully secured following legal challenges. *See Hensley*, 461 U.S. at 435. Mr. Sheppard's attorneys billed the time challenged by the DOJ after receiving—after years of litigation—a substantial number of additional documents and an amended *Vaughn* Index. Mr. Sheppard is similarly entitled to recover for the time spent briefing his challenges to the DOJ's decisions to withhold documents. While Mr. Sheppard failed to obtain *every* document for which he mounted a legal challenge, he succeeded in obtaining most of them.

The DOJ's proposed reduction is all the more inappropriate here because Mr. Sheppard made categorical arguments to obtain the withheld documents. Reducing the fee request by a percentage therefore would not reasonably reflect Mr. Sheppard's success or accurately account for his failures. It is not as if Mr. Sheppard's six-page filing identifying the documents he claimed were wrongfully withheld treated each document individually, or that Mr. Sheppard was wholly unsuccessful in obtaining any one category of document or challenging any one claimed exemption.

For these reasons, the Court will not reduce the 269.4 hours billed for challenging the DOJ's withholdings under certain FOIA exemptions. *See Hensley*, 461 U.S. at 435 ("Nor is it necessarily significant that a prevailing plaintiff did not receive all relief requested . . . [a plaintiff may recover] a fee award based on all hours reasonably expended if the relief

obtained justified that expenditure of attorney time.").

### III.     CONCLUSION

For the reasons discussed above, the Court awards Mr. Sheppard $344,122.30 in attorneys'

fees and costs of $734.98.

| Requested Fees: | $444,314 |
|---|---|
| Vague Time Entries | -$897.00. |
| Time Billed Not Reasonably Related to Litigation | -$1,269.00 |
| Excess Time Spent on Complaint | -$72,390.00 |
| Inefficiencies Resulting from Large Case Team | -$22,215.7 |
| Time Spent Seeking Extensions | -$3,420 |
| Fee Award: | $344,122.30 |

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  1/25/2022
Jefferson City, Missouri